STATE OF MISSOURI, EX REL. HENRY KEMPER, Respondent, *v.* THE ST. LOUIS, KANSAS CITY, AND NORTHERN RAILWAY COMPANY, Appellant.

February 8, 1881.

1. Where a municipal corporation has, in the due exercise of a power conferred upon it by the Legislature, assessed and levied a tax upon certain property within its limits, the Legislature may, by an act retrospective in its terms, and which takes effect before such tax becomes due, annul the assessment so made, and vest in another body the power to make the assessment for that year.

2. The act "to provide for the assessment and collection of taxes on bridges owned by joint-stock companies, and property and franchises owned by telegraph and express companies," is not a special law within the meaning of the constitutional inhibition against the passage of local or special laws.

3. Sect. 15 of the Bill of Rights was not intended to prohibit the passage of retrospective acts which do not disturb rights of a private character.

APPEAL from the St. Charles Circuit Court, EDWARDS, J. *Reversed, and judgment.*

WELLS H. BLODGETT and GEORGE S. GROVER, for the appellant: The purposes for which counties and cities may levy and collect taxes, and the time and manner in which property may be assessed and taxed by municipal authorities, are under the absolute control of the Legislature, and no city or county can acquire any vested right to any particular portion of its revenue, or to any particular assessment, or method of assessment, which cannot be controlled, modified, or taken away by the Legislature. — Dill. on Mun. Corp. 147, 148, sects. 35, 36; Cooley on Tax. 34; Burr. on Tax. 2; Hill. on Tax. 3, 4, sect. 3; *Blanding* v. *Burr*, 13 Cal. 343.; *Augusta Bank* v. *Augusta*, 49 Me. 507; *Guilford* v. *Chenango County*, 13 N. Y. 149; *The People* v. *Mayor*, 4 Comst. 419; *The State ex rel.* v. *Severance*, 55 Mo. 378; *Pacific R. Co.* v. *Watson*, 61 Mo. 57.

C. DAUDT, T. S. CUNNINGHAM, and F. W. HINMAN, for the respondent: Retrospective enactments are not valid. — Const., Art. II., sect. 15. The passage of special laws is prohibited. — Const., Art. IV., sect. 53. When the power of taxation has been once conferred on a corporation, the corporate authorities alone have the right to exercise it, and the Legislature creating the corporation cannot vest the whole or any part of that taxing power in any other body. — Dill. on Mun. Corp., chap. 5, sect. 64; *Railroad Co.* v. *Alexandria*, 17 Gratt. 176; *Richmond* v. *Daniel*, 14 Gratt. 387. When the General Assembly has authorized a municipal corporation to acquire revenue by taxation for its local and corporate needs, its (the General Assembly) constitutional power over local taxation in that political subdivision of the State has been exhausted, and all taxes levied and collected for the use of that municipality must be levied and collected by the local authorities. — Const. Mo., Art. X., sects. 1, 10; *Howard* v. *Drainage Co.*, 51 Ill. 130; Dill. on Mun. Corp., chap. 19, sects. 590, 592; chap. 4, sect. 38; chap. 5, sects. 55, 64.

THOMPSON, J., delivered the opinion of the court.

In April, 1877, the local authorities of St. Charles city and county, Missouri, assessed all the property of the St. Charles Bridge Company in said city and county for the year 1877 at a valuation of $200,000, under the provisions of the general revenue-law of the State, and levied taxes thereupon. The taxes so assessed and levied became due and payable on August 1, 1877, and were payable without penalty thereon at any time prior to January 1, 1878. On the twenty-first day of April, 1877, the Legislature passed an act entitled "An act to provide for the assessment and collection of taxes on bridges owned by joint-stock companies, and property and franchises owned by telegraph and express companies." Acts 1877, p. 391. The provisions of this act which are material to this controversy are as follows : —

" Sect. 1. All bridges over streams in this State, or over streams dividing this State from other States, owned by joint-stock companies, and all such bridges where a toll is charged for crossing the same, which are now constructed, which are in the course of construction, or which shall hereafter be constructed, and all property, real and personal, including the franchises owned by telegraph and express companies, shall be subject to taxation for State, county, municipal, and other local purposes, to the same extent as property of private persons, and taxes levied thereon shall be levied and collected in the manner as is now or may hereafter be provided by law for the taxation of railroad property in this State ; and County Courts and the county and State boards of equalization are hereby required to perform the same duties, and are given the same powers in the assessing, equalizing, and adjusting the taxes on the property set forth in this section, as the said courts and boards of equalization have, or may hereafter be empowered with, in the assessing, equalizing, and adjusting the taxes on railroad property ; and the president or other

chief officer of any such bridge, telegraph, or express company, or the owner of any such toll-bridge, is hereby required to render statements of the property of such bridge, telegraph, or express company, in like manner as the president or other chief officer of railroad companies is now or may hereafter be required to render for the taxation of railroad property.

"Sect. 2. In case any such bridge, or the property or franchises of any telegraph and express company, shall have been subjected to taxation, prior to the passage of this act, for any year for which it shall not have been assessed and paid taxes, or if any such property having been assessed, and from any irregularity in the assessment, or from any cause, the taxes thereon have not been paid, then a separate return for each year for which taxes have not been paid shall be made, as required by the law governing the taxation of railroad property."

This statute contained no emergency clause, and hence did not take effect until July 30, 1877; but it is perceived that it took effect two days before August 1, 1877 — that is, before the taxes thus levied by the local authorities of St. Charles city and county became payable. The taxes so levied upon the assessment aforesaid were not paid by the Bridge Company, nor by the St. Louis, Kansas City, and Northern Railway Company, which became the owner of the property so assessed. In the month of May of the following year (1878), the State board of equalization, proceeding under the statute before set out, made a new assessment of the property in question for the year 1877, at a valuation of $150,000. On July 23d of the same year the County Court of St. Charles levied taxes for State and county purposes, and municipal purposes as to the city of St. Charles, upon the assessment thus made by the State board of equalization. The taxes so levied were paid in full by the defendant, the St. Louis, Kansas City, and Northern Railway Company. Notwithstanding they have

done this, the county collector brings this suit to recover the difference between the county and municipal taxes for the year 1877, extended on the valuation of $200,000, as fixed in the first assessment, and the tax which the defendant paid upon the valuation of $150,000, as fixed by the State board of equalization. The parties have filed a stipulation setting forth, in substance, the above facts, and agreeing that if the former assessment shall be adjudged valid the judgment shall be entered for the plaintiff, whereas if the latter assessment is adjudged valid it shall be entered for the defendant.

We are therefore to decide whether the latter assessment superseded the former; and in support of his position that it did not, the plaintiff presses upon us three considerations: First, that the act of April 21, 1877, cannot be allowed to have the effect of vacating the antecedent assessment and levy, because to give it this effect would make it obnoxious to that clause of the Constitution of the State which forbids the passage of retrospective laws. Const., Art. II., sect. 15. Second, that the act in question is obnoxious to that clause of the Constitution which forbids special legislation. Art. IV., sect. 53. Third, that, having conferred upon the corporate authorities of St. Charles county and city a given power of taxation, it was not competent to the Legislature, after such power had been exercised by the corporate authorities, to take it away and vest it in another body.

The last proposition appears to us to be simply another way of stating the first; so that the whole controversy is narrowed down to two questions: First, whether, after a municipal corporation has, in the due exercise of a power conferred upon it by the Legislature, assessed certain property within its limits for taxation, and levied a tax thereon, the Legislature can, by an act taking effect before such tax becomes due and payable, which act is retrospective in its terms, annul the assessment so made, and vest in another body the power to make the assessment for the year in ques-

tion. Second, whether the act in question is a special law, within the meaning of sect. 53 of Art. IV. of the Constitution. We think that the first of these questions must be answered in the affirmative, and the second in the negative.

No case has been cited which holds that a municipal corporation has a vested right in a tax lawfully levied for public purposes, but not collected, which the Legislature cannot take away. Such bodies are creatures of the Legislature to such an extent that they hold those franchises which are of a public nature entirely subject to legislative control. Unlike a private corporation, no. vested right in the nature of a contract exists in those franchises, and it is competent to the Legislature to modify them at pleasure, or to take them wholly away. Even if the tax had been collected, the Legislature could have deprived the city or county of St. Charles of it, by abolishing its corporate existence, and thus depriving it of the power to hold any property whatever. *City of Paterson* v. *Society*, 24 N. J. L. 385 ; *Laramie* v. *Albany*, 92 U. S. 307 ; *Berlin* v. *Gorham*, 34 N. H. 266. " The creation of municipal corporations," says Mr. Justice Cooley, " and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the State of that general control over their citizens which was before possessed. It still has authority to amend their charters, enlarge or diminish their boundaries, consolidate two or more into one, overrule their legislative action whenever it is deemed unwise, impolitic, or unjust, and even abolish them altogether, in the legislative discretion." Cooley's Const. Lim. 192, citing many cases. See *St. Louis* v. *Allen*, 13 Mo. 400, 412 ; *St. Louis* v. *Russell*, 9 Mo. 507. " The powers conferred on municipalities," says Wagner, J., " are subordinate to the powers of the Legislature over the same subject, and the latter will never be presumed to have abdicated their right to exercise these powers unless it is plainly so stated, or there is a necessary inconsistency between the two enact-

ments." *The State* v. *Harper*, 58 Mo. 531. "The city," said the same learned judge in another case, " can only raise money and apply it to a particular purpose by virtue of a delegated authority, and the same authority that grants the power may alter the law and divert it to a different object." *St. Louis* v. *Shields*, 52 Mo. 354. Indeed, if the tax levied upon the first assessment had actually been paid, it would have been competent for the Legislature to divert it to another use from that for which it was levied. *The State ex rel.* v. *County Court*, 34 Mo. 546. These decisions are wholly incompatible with the idea that a county or incorporated town can have a vested right to collect a tax which has been lawfully assessed and levied, which the Legislature cannot displace by authorizing and requiring a new assessment to be made. See also *Augusta* v. *North*, 57 Me. 392 ; Burr. on Tax. 390.

It will be seen from the second section of the act that it is in express terms retrospective. It extends back, in express terms, to any preceding years in which the taxes on the property embraced in the first section, *from any cause*, may not have been paid. Its language is somewhat similar to that used in the third section of the act of March 10, 1871, which was construed by the Supreme Court in *Pacific Railroad* v. *Watson*, 61 Mo. 57, the court declaring, what the language of the act obviously imported, that " if there was any previous year that the railroad company had been subjected to taxation, and the taxes had been assessed and paid for the said year, a separate return was to be made for said year in which the taxes were unpaid." The facts of that case were not precisely similar to those in this case, but they are sufficiently like those before us to make that case a persuasive authority. See also *The State ex rel.* v. *Severance*, 55 Mo. 378.

Nor is there force in the plaintiff's position that this statute, if held to be retrospective, is in conflict with sect. 15 of the Bill of Rights, which prohibits the Legislature from

passing any law retrospective in its operation. Provisions of this kind exist, it is believed, in the constitutions of all the States, and they are generally held to extend only to the prohibiting of legislation of a retrospective character which disturbs rights of a private nature. If a controlling authority on this point is needed, it will be found in the case of *The State ex rel.* v. *County Court,* 34 Mo. 546, 571.

Is the statute in question within the fifty-third section of Art. IV. of the Constitution, which prohibits special legislation? This article provides that the General Assembly shall not pass any local or special law in a long list of enumerated cases, none of which embrace in terms the case before us, and then concludes : " In all other cases where a general law can be made applicable, no local or special law shall be enacted ; and whether a general law could have been made applicable in any case, is hereby declared to be a judicial question, and as such shall be judicially determined, without regard to any legislative assertion on the subject. Nor shall the General Assembly indirectly enact such special or local law by the partial repeal of the general law ; but laws repealing local or special acts may be passed."

Without undertaking to give a meaning to the words " special law," as used in the above provision, which will be applicable to the other cases, we are all agreed that the statute here in question is not a special law. It bears no resemblance to any of the subjects of legislation which are catalogued as local or special laws in the section in question. Its object was simply to extend the provisions of the existing law as to the assessment of railroad property for taxation to certain other subjects of taxation, which the Legislature no doubt thought could more wisely and equitably be assessed for taxation in this way. Upon these subjects of taxation it bears with uniformity throughout the entire State. It rests on the same reasons as the statute relating to the taxation of railroad property, and its

validity must be determined by the same tests as that of the latter statute. As the Supreme Court has repeatedly recognized the validity of the latter statute, we do not consider the validity of this one a debatable question.

We might possibly have determined the case upon the point that the County Court of St. Charles County, on July 23, 1878, levied the tax which the defendant paid on the assessment of the State board of equalization, and thereby apparently treated it as valid; but as neither party has seen fit to raise the question of estoppel, we have not considered it.

We hold that the act of April 21, 1877, is a valid exercise of legislative power; that it became, by its terms, operative on July 30, 1877, in such a manner that thereafter the property of the St. Charles Bridge Company could only be assessed for taxation in pursuance of its provisions; that it hence operated to vacate the previous assessment and levy which had been made by the authorities of St. Charles county and city, and that consequently the defendant is not liable to pay the difference between what it paid under the assessment made by the State board of equalization and the levy of July 23, 1878, and what it would have been required to pay under the previous assessment and levy.

As the learned judge who heard the cause at circuit took a different view of it, we are constrained to reverse his judgment, and, under the stipulation in the record, we enter a judgment in this court for the defendant. All the judges concur.