ALASKA MEXICAN GOLD MINING CO. v. TERRITORY OF ALASKA. *

(Circuit Court of Appeals, Ninth Circuit. September 5, 1916.)

No. 2727.

1. LICENSES ☞7(1)—FEES—CIVIL ACTIONS.

Laws Alaska 1913, c. 52, § 1, imposes a license fee of one-half of one per cent. on net income above $5,000 per annum upon the business of mining. Section 3 declares that any person, corporation, or company doing or attempting to do business without first having paid the license therein required, shall be deemed guilty of a misdemeanor, and imposes certain penalties. Laws Alaska 1915, c. 76, § 4, provides that special remedies authorized by an act shall not be deemed exclusive, and that any appropriate remedy, civil or criminal, may be invoked in collection of taxes, while section 7, amending the original act, declares that no person, firm, or corporation, shall be relieved of any tax, penalty, or interest accruing under the original act. *Held* that, though the original act did not provide any civil remedy for collection of license taxes, yet the duty and ob-

ligation to pay them existed, and so civil action might be subsequently authorized without impairing the rights of a taxpayer.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7, 19; Dec. Dig. ☞7(1).]

**2.** LICENSES ☞32(2)—FEES—COLLECTION.

A civil action to recover license taxes imposed by Laws Alaska 1913, c. 52, will not be defeated because evidence outside of the statute is necessary to arrive at the amount on which the per centum of the tax fixed shall be calculated; the amount being susceptible of ascertainment.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 66; Dec. Dig. ☞32(2).]

**3.** LICENSES ☞32(2)—FEES—COLLECTION.

That Laws Alaska 1913, c. 52, imposing license taxes, provided for penalties and punishment in case of nonpayment, does not preclude a civil action for recovery of the taxes; the penalties and punishment being provided to discourage evasion of the statute.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. § 66; Dec. Dig. ☞32(2).]

**4.** LICENSES ☞7(1)—STATUTE—VALIDITY.

Laws Alaska 1913, c. 52, § 1, imposes a license tax on the business of mining of one-half of one per cent. on net income above $5,000 per annum. Section 3 of the act declares that any person, corporation, or company, doing or attempting to do business without first having paid the license required, shall be deemed guilty of a misdemeanor, etc. *Held*, that as the intent of the statute is plain, and as a literal enforcement of its provisions would render it invalid, it must be construed as requiring persons engaged in the business of mining to apply for a license and subsequently to pay the license fee based on a percentage of the net income, and, as so construed, the act is valid.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 7, 19; Dec. Dig. ☞7(1).]

**5.** CONSTITUTIONAL LAW ☞42—DEFECTS OF STATUTE—PERSONS ENTITLED TO ATTACK.

Defendant, who made no application for a license to carry on the business of mining, cannot, in a suit to recover the license tax imposed, defeat recovery on the ground that Laws Alaska 1913, c. 52, § 2, declaring that the licenses shall be issued by the clerk in compliance with the order of the court and that the clerk shall keep a full record of all applications and of all recommendations for and remonstrance against the granting of license, and the action of the court thereon, renders the granting of a license purely arbitrary; for defendant, not having applied for a license, cannot have been injured.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 39, 40; Dec. Dig. ☞42.]

**6.** LICENSES ☞7(2)—WHAT ARE—UNIFORMITY.

The license taxes imposed by Laws Alaska 1913, c. 52, on the business of mining, are not revenue measures pure and simple, and so are not invalid under Organic Act (Act Aug. 24, 1912, c. 387, 37 Stat. 514 [Comp. St. 1913, § 3536]) § 9, providing for uniformity of taxation.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 8, 19; Dec. Dig. ☞7(2).]

In Error to the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Action by the Territory of Alaska against the Alaska Mexican Gold

Mining Company, a corporation. There was a judgment for plaintiff, and defendant brings error. Affirmed.

This case was submitted upon an agreed statement of facts by which it appears that the Alaska Mexican Gold Mining Company, a mining corporation, was carrying on a mining business between July 31, 1913, and January 1, 1914, and that during that period it had a net income of $59,655.77; that for the calendar year 1914 it had a net income of $119,953.49. It further appears that the Alaska Mexican Gold Mining Company fully complied with the provisions of the Act of Congress of June 6, 1900, providing for taxes on business and trade in Alaska, by paying thereunder a tax of $3 per annum on each of its 120 stamps. The District Court in Alaska held that the defendant was liable for the license tax imposed by the territory in chapter 52, Session Laws of 1913; that the taxes so due could be recovered in a civil action under the provisions of chapter 76, Session Laws of 1915; and judgment was rendered against the mining company. Upon writ of error the case comes to this court.

The contention of the plaintiff in error is: (1) That no civil liability was created by the provisions of chapter 52 of the act of the territorial Legislature, Session Laws of 1913, and that the provisions of chapter 76 of the Session Laws of the Alaska Legislature of 1915, providing for the collection of the back taxes then due, were void; (2) that chapter 52 of the act of the territorial Legislature of 1913 is void as against the plaintiff in error because it was impossible for plaintiff in error to comply with the provision of such act and apply for and obtain a license as therein provided, in that it could not know and pay in advance the one-half of one per cent. on its net income, and that, in a prosecution for failure to comply with the provisions of the act, the court could not impose a sentence, because the amount fixed as a penalty is too indefinite and uncertain; (3) that the territorial act referred to is void as conferring arbitrary power upon the court or judge to deny the owner of a mining claim the right to work and operate his claim, and thereby the statute seeks to give the power to confiscate the property of one engaged in a lawful pursuit; (4) that the license tax imposed by the act of the Legislature referred to is a revenue measure, and in conflict with that provision of section 9 of the Organic Act which provides that all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and that the assessment shall be according to the actual value thereof; (5) that the act of the territorial Legislature referred to is void for lack of uniformity upon the same class of subjects, in that it exempts from taxation the first $5,000 of the net income.

Hellenthal & Hellenthal, of Juneau, Alaska (Curtis H. Lindley, of San Francisco, Cal., of counsel), for plaintiff in error.

J. H. Cobb, Chief Counsel for the Territory of Alaska, of Juneau, Alaska, for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). **[1-3]** By the Act of May 1, 1913, which was to establish a system of taxation, create revenue, and provide for collection thereof, and for other purposes (Alaska Salmon Company v. Territory of Alaska, No. 2720, 236 Fed. 62, —— C. C. A. ——), the Legislature provided that any person prosecuting any of the following lines of business within Alaska should first apply for and obtain license so to do from the District Court or subdivision thereof in said territory, and "pay for said license for the respective lines of business and trades as follows, to wit: * * * Mining. One-half of one per cent. on net income

over and above five thousand dollars per annum." Section 2 of the act, so far as material, is as follows:

"That the licenses provided for in this act shall be issued by the clerk of the District Court or any subdivision thereof in compliance with the order of the court or judge thereof duly made and entered; and the clerk of the court shall keep a full record of all applications for license and of all recommendations for and remonstrances against the granting of licenses and the action of the court thereon."

By section 3 of the act it is provided:

"That any person, corporation or company doing or attempting to do business in violation of the provisions of this act, or without first having paid the license therein required, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined, for the first offense, in a sum equal to the license required for the business, trade or occupation; and for the second offense, fine equal to double amount of the license required; and for the third offense, three times the license required and imprisonment for not less than thirty days nor more than six months; provided, that each day business is done or attempted to be done in violation of this act shall constitute a separate and distinct offense; provided further, that in all prosecutions under this act the costs shall be assessed against any person, firm or corporation convicted of violations hereof, in addition to the fine or penalty imposed, and for failure to pay such fine and costs such person, firm or corporation may be imprisoned, in the discretion of the court, at the rate of one day for every two dollars of said fine and costs; provided further, however, that in the event of any person, firm, or corporation shall fail to pay the license required by the provisions of this act and shall further fail to pay any fine that may be imposed by a court of competent jurisdiction, for such failure to so pay said license fee or tax required by the provisions of this act, judgment may be entered against such firm, person, or corporation and process shall be issued for the enforcement of the collection of said judgment and in the same manner as judgments in civil proceedings."

The contention that no civil liability was created by the act of 1913 must not be confused with the belief that no duty to pay was imposed by that act. There was a legal command to take out a license before the plaintiff in error prosecuted the "line of business" of mining. It may be assumed that under the law of 1913 the only way the territory had to enforce the duty to pay was by conviction of misdemeanor after failure to pay, and, upon continuing failure to pay, by judgment to collect as in civil suits. But the duty to pay having existed, remedy for the enforcement of the duty or obligation could be provided by legislation subsequent to the time when the duty arose; or if when the duty arose there was a remedy, but it was exclusively confined to criminal prosecution and judgment thereafter, such remedy could be changed or enlarged by subsequent legislative action, or additional remedy could be given, without impairing the rights of the plaintiff in error. Sturges v. Carter, 114 U. S. 511, 5 Sup. Ct. 1014, 29 L. Ed. 240; Holthaus v. Adams County, 74 Neb. 861, 105 N. W. 632; Hosmer v. People, 96 Ill. 58; State ex rel. Kemper v. St. L., K. C. & N. Ry. Co., 9 Mo. App. 532; Cooley on Taxation (3d Ed.) p. 492 et seq.; Royall v. Virginia, 116 U. S. 572, 583, 6 Sup. Ct. 510, 29 L. Ed. 735.

By section 4 of chapter 76 of the Laws of Alaska for 1915, it was provided that special remedies provided by that particular act or other acts of the Legislature shall not be deemed exclusive, and that

"any appropriate remedy either civil or criminal, or both, may be invoked by the territory in the collection of all taxes, and in civil actions the same penalties may be collected" as were by the act of 1915 provided in criminal actions. Furthermore, it was provided by section 7 of the Act of April 29, 1915, which amended the act of 1913, that the act of 1913 was repealed except in so far as the same was reenacted by the Act of April 29, 1915, but that nothing in the act of 1915 contained "shall, be construed to relieve any person, firm or corporation from the payment of any tax, penalty and interest accrued, and owing under the act of which this act is an amendment, but all such taxes, penalties and interest shall be paid, or collected and enforced in the same manner as taxes herein provided for are collected and enforced."

Construing these statutes together, we find that a civil remedy for the collection of taxes was given by section 4 of the act of 1915, and that, under section 7 of the same act, remedy became available to collect taxes due under the act of 1913. There is no rule which prohibited the territorial Legislature of 1915 from adopting the remedies it did to recover for license taxes prescribed by the law of 1913. Nor does the fact that, in an action of debt for the tax, it may be necessary to resort to sources of information outside of the statute to arrive at the amount on which the per centum of tax fixed by the statute is to be calculated, affect the question; for the statutory charge is certain for the purposes of an action in debt, because it can be made certain through action in court. This principle was upheld in United States v. Chamberlin, 219 U. S. 250, 31 Sup. Ct. 155, 55 L. Ed. 204. It was there held that the penalties in the law then under examination were provided in order to induce the payment of the tax, and not as a substitute for payment. The court said:

"It cannot be supposed that Congress intended, by penalizing delinquency, to deprive the government of any suitable means of enforcing the collection of revenue. * * * Punishment by imprisonment, under section 13, is imposed only where it can be shown that there was an 'intent to evade the provisions' of the act, and while this remedy is appropriate in such a case, and is for the obvious purpose of discouraging evasion, it is without application where, for any other reason, the tax has not been paid and thereby the government has lost its revenue."

The language of section 7 of the act is very explicit in providing that taxes due under the act of 1913 shall be collected and enforced in the same manner that taxes provided for by the act of 1915 shall be collected and enforced. There is therefore a perfectly clear expression that the intention of the Legislature was that the remedy shall be under the act of 1915; and it is settled that the grant of a new remedy in unequivocal terms, even though retroactive, is not necessarily void legislation. League v. Texas, 184 U. S. 156, 22 Sup. Ct. 475, 46 L. Ed. 478; Stephens v. Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041; Cook v. United States, 138 U. S. 157, 11 Sup. Ct. 268, 34 L. Ed. 906.

[4] We are unable to agree with plaintiff in error in the argument that chapter 52, above referred to, is void because of an impossibility

to comply with the provisions of the act. It will be readily granted that the act is not as explicit as it should be, and that its application calls for a postponement of the payment of the tax until the amount of revenue from the business taxed can be ascertained; but the fact that it is inartificially drawn and that its exact enforcement may be difficult, ought not to make it invalid, if the language used expresses a plain meaning by the lawmaking body. For many years the collection of license taxes which were imposed by acts of Congress for Alaska was carried on by collecting indeterminate amounts. Act June 6, 1900, c. 786, 31 Stat. 321. The system was not new in the territory, and, in the light of legislative history, not incapable of being put into practical operation; and, the tax being one which could be lawfully imposed, we believe it beyond judicial power to declare the law imposing it to be invalid merely because the Legislature laid down a procedure which, if literally obeyed in the arrangement of the steps required, necessarily would defeat the plain, expressed object of the legislation. The intention being plain, the inartificiality of the law should not result in its overthrow. Johnson v. Southern Pacific, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Cliquot's Champagne, 3 Wall. (70 U. S.) 114, 18 L. Ed. 116; United States v. Stowell, 133 U. S. 1, 12, 10 Sup. Ct. 244, 33 L. Ed. 555.

[5] It is urged that the act should be declared invalid because under its provisions the "action of a court or judge in granting or refusing a license is purely arbitrary and is guided by nothing except the remonstrances and recommendations filed with the application and submitted to him therewith." Reverting to the provisions of the act of 1913, we find that by section 2 thereof the license provided for "shall be issued by the clerk of the District Court * * * in compliance with the order of the court or judge thereof duly made and entered; and the clerk of the court shall keep a full record of all applications for license and of all recommendations for and remonstrances against the granting of licenses and the action of the court thereon." Section 3, following section 2 just quoted, has already been referred to as the clause making provision for penalizing those doing business in violation of the provisions of the act, or without first having paid the license therein required. The procedure contemplated seems to have been as follows: The applicant for a license shall duly file his application with the clerk of the District Court. The clerk shall keep a record of this application and recommendations and remonstrances against the granting of the license applied for. The court must act upon such recommendations and remonstrances, and when the court has acted the license shall be issued by the clerk in compliance with the order of the court or judge. The language in the act of 1913, as just heretofore quoted, is the same as is found in section 2572 of the Compiled Laws of Alaska. In the act of Congress, however, by section 2573, Compiled Laws of Alaska, special provision was made with relation to licenses to be issued for sale of intoxicating liquor; it being required that, before license was granted in such cases, a certain showing had to be made to the satisfaction of the court that a majority of the male and female citizens

over the age of 21 years within a certain distance of the place where the liquor was to be sold had consented to the issuance of the license. This provision apparently only applied to action upon applications for license for disposition of intoxicating liquors. It may be that, as to licenses where the business is in itself lawful, no power under the law of 1913 was given to the court to withhold issuance of license after application was duly made; but, inasmuch·as we think it was not an excess of legislative power to require an applicant for license to apply first to the territorial court and to make the court or judge a deciding authority in acting upon the application, a decision on the point suggested is not necessary in this case, because this plaintiff in error has never filed an application for a license, and is therefore in no position at present to assail the validity of the law on the ground·of possible abuse of power vested in the court or judge called on to make an order with respect to its application. If, after it shall have applied, the court or judge should deny it a license, it will then be time enough to invoke remedy for any injustice that may have been done.

[6] The contention that the license tax imposed is a revenue measure pure and simple, and as such is in conflict with section 9 of the Organic Act, is involved in the discussion which we have entered into in the case of Alaska Pacific Fisheries v. Territory of Alaska (No. 2709) 236 Fed. 52, —— C. C. A. ——, and we abide by the conclusion reached in that case.

We find none of the objections made to the validity of the law well taken.

The judgment of the District Court is therefore affirmed.