## UNITED STATES v. STANDARD OIL CO.

(First Division. Juneau. May 9, 1921.)

No. 1406–A.

**1. Licenses ⬀16(9)—Mercantile Establishments—Definitions.**

    The Standard Oil Company, a corporation, engaged in the business of selling oil and oil products in many parts of Alaska, is a mercantile establishment while prosecuting that line of business in Alaska.

**2. Licenses ⬀7(1)—Constitutional Law.**

    The fact that the act of Congress levying license tax on trade and business in Alaska requires mercantile establishments

⬀See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to pay such license tax in advance, on the total amount of business done during the year, does not render the law unconstitutional.

**3. Licenses ⊕➡16(9)—Mercantile Establishments.**

The Standard Oil Company, prosecuting the business of selling oil and oil products in many parts of Alaska, applied for a license for "all Alaska," tendering only the maximum fee for one such establishment. *Held,* the act of Congress requires every person or corporation prosecuting "mercantile establishments" in Alaska to pay the maximum license tax on each and every such "mercantile establishment" in the locality where it prosecutes such business, and not a single tax on one license for "all Alaska."

The stipulated facts in this case differ from those of the preceding case (No. 1404–B, 6 Alaska, 347) in the following particulars, to wit: In this case taxes are claimed to be due for the year ending October 31, 1917, and instead of the company having procured a license, as in the preceding cases, for "all Alaska," it tendered to the clerk of the court $500 for such a license and demanded that the same be issued to it. The demand was refused by the clerk; whereupon the company deposited the money with the clerk and proceeded to do business at all the places named in the indictment.

The contentions of the company in this case are that it is not required to take out any license at all, because:

(1) It is not a mercantile establishment, but only sells its own oil and oil products; and (2) "the law is unconstitutional because it requires the payment of a license tax in advance, the amount of which is made dependent upon the volume of business transacted during the year for which the tax is paid, * * * and that, since this cannot be done, it is impossible to comply with the law, and the defendant is thus placed in a position where it cannot lawfully conduct its business at all, and so defendant is deprived of its right to carry on its business."

There is also a third contention, to wit: That even if the law be constitutional and the company comes within the term "mercantile establishment," yet one general license for all Alaska is all that is required.

Jas. A. Smiser, U. S. Atty.

Hellenthal & Hellenthal, of Juneau, for defendant.

JENNINGS, District Judge. I am unable to agree with any one of these contentions.

To say that the Standard Oil Company is not a mercantile establishment is, it seems to me, a case of "sticking in the bark." The law requiring occupation licenses is for the purpose of raising revenue for the support of the government. The idea of the license law undoubtedly was that all persons who do business for profit in the district of Alaska should pay their proportion. To say that a concern of the magnitude of the Standard Oil Company, selling its products for profit in nearly every town of this commonwealth, is meant to be exempt from taxation, while the baker, the butcher, the meat market, the barber shop, the fisherman, must each pay a certain sum as a license fee, is, it seems to me, to make an untenable proposition. It is true that the strict definition of the word merchant is one who "buys and sells," but there is also a secondary definition of the word mercantile, and that is "pertaining to trade and commerce," and I think that this broader signification must be given to the words "mercantile establishment"—i. e., "a business establishment doing a business of, * * *" etc.

As to the law being unconstitutional in that it requires a license to be paid in advance, dependent upon the amount of business done, and is therefore impossible to be complied with, it is sufficient to say that that point has been expressly decided adversely to the defendant by our Circuit Court of Appeals in the case of Alaska Mexican G. M. Co. v. Territory of Alaska, 236 Fed. 64, section 4, 149 C. C. A. 274, which was followed and amplified in the case of Alaska Pacific Fisheries v. Territory of Alaska, 236 Fed. 70, section 2, 149 C. C. A. 280.

As to the third contention: In a letter from the Attorney General to the United States Attorney at Nome, Alaska, dated April 26, 1915, the former gives very cogent reasons for the position assumed by the Department that an institution doing such business as the Standard Oil Company does should pay a license in each place where it does business. I cannot do better than give those reasons in hæc verbis, as follows:

"The first paragraph of section 2569 provides:

"'That any person or persons, corporation, or company prosecuting or attempting to prosecute any of the following lines of busi-

6 A.R.—23

ness within the district of Alaska shall first apply for and obtain license so to do from a district court or a subdivision thereof in said district, and pay for said license for the respective lines of business and trade as follows, to wit.'

"More than forty subjects of taxation are then enumerated, which fall into three divisions: (1) Upon cigar stores, drug stores, hotels, etc. (comprising far the greater number of the lines of business enumerated), a fixed amount is levied, as $50.00 per annum, $100.-00 per annum, and so on; (2) upon mercantile establishments a graduated tax in the customary form is levied, based upon the amount of business done, with a maximum of $500.00 upon establishments doing business equal to or in excess of $100,000; (3) upon sawmills, transportation companies, public wharves, and the like, a· specific tax per unit is levied upon the annual amount of manufactured output, or the number of tons of freight handled, as the case may be. The last class may be omitted from further consideration as no question is presented concerning it.

"In my opinion, the words 'line of trade or business,' as employed in section 2569, supra, are merely introductory and were not intended to fix and define the specific subjects of taxation, that being done in the enumeration following to which resort must be' had. Followed to its unescapable conclusion, your construction that the subjects of taxation are defined by the words 'lines of trade or business,' in ·the introductory paragraph, would permit a licensee owning a number of meat markets, ·for instance, to take out a single license for the 'line of trade or business' of operating meat markets, pay a fee of $15.00 per annum, and conduct as many markets as he chose; so with persons operating hotels, drug stores, waterworks, gas plants, and a majority of the other establishments mentioned· in the enumeration. Clearly this is not the intent of the law.

"In the case of In re Pacific Cold Storage Company, 1 Alaska, 429, Judge Wickersham, in stating the facts involved, referred to the fact that the company 'made application to the court, and received a license for three or more meat markets in the town of Nome, ·and paid therefor the sum of $15.00· each, as required by statute.' Apparently there was no question in his mind that each business establishment should pay a separate tax and not each 'line of trade or business.' The company handled coal also under a license as a mercantile establishment, making returns, however, only upon the coal business. It sold dressed meats to its own and other meat markets, and the court held that it was necessary for it to take out a license as a mercantile establishment dealing in meats, in addition to those under which it operated its several meat markets and its coal establishment.

"While it seems fairly conclusive that, considered alone, the provisions of section 2569 require a separate license for each separate business establishment, this view is strengthened by a consideration of sections 630, and, 305, Compiled Laws of Alaska. Section 630 (Act approved March 2, 1903, 32 Stat. p. 946) provides

that all the license moneys collected under the act hereinabove set out (section 2569) 'from any person for any business, trade, or occupation carried on within the limits of any incorporated town in the district of Alaska * * * shall by said clerk be paid over to the treasurer of such town, to be used for school and municipal purposes.'

"Obviously this section contemplates that each incorporated town shall have the full benefit of all the taxes levied upon the business establishments operating within its limits, to be paid directly to its treasurer.

"Section 305 (Act approved May 14, 1906, 34 Stat. 192) provides:

" 'That all moneys derived from and collected for liquor licenses, occupation or trade licenses outside of the incorporated towns in the district of Alaska shall be deposited in the Treasury Department of the United States, there to remain as a separate and distinct fund, to be known as the "Alaska fund." '

"Under this section the taxes upon the establishments doing business outside of incorporated towns shall be paid into the Treasury of the United States for the benefit of the Territory of Alaska.

"There is no statutory warrant for the apportionment by the clerk of the United States court of a single license tax upon a mercantile company collected by him, among the treasurers of the several incorporated towns in which the company may maintain establishments, or among the treasurers of such incorporated towns and the Treasury of the United States, if it also maintain establishments outside of such incorporated town. An arrangement of this character would be cumbrous and confusing, and open the doors for easy evasion of tax payments. The presumption is strong that if Congress had desired the collection of a single license tax upon each 'line of trade or business,' and its apportionment among the respective beneficiaries, it would have provided adequate machinery to carry its intention into effect.

"Construing all the applicable acts of Congress (sections 2569, 630, and 305, supra) in pari materia, you are accordingly advised: That a license tax should be collected from each mercantile establishment, the amount to be based upon the business transacted by each, irrespective of its ownership or whether the same corporation, company or person own one or a number of similar establishments in the same or different towns or at points outside of the towns."

The reasoning is sufficiently potent for me to decide the point against the defendant in this case.

Defendant is found guilty on each count, and is fined the amount of the license required for doing business at the places mentioned in each count respectively.