## TERRITORY v. NORTHERN COMMERCIAL CO.

(Fourth Division.   Fairbanks.   November 8, 1922.)

No. 2600.

1. Constitutional Law ⬤⇒48—Statutes—Construction.

It is a universally recognized rule of construction in testing the validity of a statute subject to two constructions, one of which will uphold its validity, while the other will condemn it, that the former will be adopted, if it can be done without violence to the fair meaning of the words employed.

2. Constitutional Law ⬤⇒48—Statutes.

It may be premised that courts will not pronounce an act of the Legislature void or unconstitutional, unless such unconstitutionality clearly appears beyond a reasonable doubt.

⬤⇒See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. Licenses ☜1—Taxation.**

The license fee on each pelt or skin laid in section 3 of chapter 42, Sess. Laws of Alaska 1921, in the act to impose a license on the business of fur farming, etc., is constitutional as a license tax on the business, and not violative of section 9 of the Organic Act of Alaska (U. S. Comp. St. § 3536), as a tax upon property.

**4. Statutes ☜109—Title of the Act—Constitutional Law.**

Section 8 of the Organic Act of Alaska of August 24, 1912, 37 Stat. 512 (U. S. Comp. St. § 3535) provides that: "No law shall embrace more than one subject, which shall be expressed in its title"; on this objection to the title to chapter 42, Sess. Laws of Alaska 1921. *Held* that the clause is mandatory; that its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation; that the title of a bill may be very general, and need not contain an abstract of the contents of the bill, or specify every clause therein, it being sufficient if they are all referable and cognate to the subject expressed. Everything which is necessary to make a complete enactment, or to result as a complement of the thought therein contained, is included in and authorized by such title expressed in general terms.

**5. Statutes ☜121(1)—Title of the Act.**

An objection to chapter 42, Sess. Laws of Alaska 1921, is void, because more than two subjects are embraced therein and not expressed in its title. *Held,* there is no such weakness in the adoption by the Legislature of a broad and comprehensive title in this act as renders the act unconstitutional by reason thereof, nor does such a result follow the failure of the Legislature to state in the title with the same fullness as in previous acts on the same subject the contents thereof. There is no possibility that any of the abuses which this constitutional provision was intended to prevent arose by the use of a broad, general, and comprehensive title.

This is an action by the territory to recover the amount of unpaid license fees and declaring a lien for the business of dealing in furs as a stationary fur buyer within the territory for the year 1921, pursuant to the provisions of chapter 42 of the Session Laws of Alaska 1921, p. 132.

There are two causes of action—one embracing the business of the defendant at Circle, and the other at Tanana, Alaska. The total amount claimed to be due is $1,591.15.

The defendant has demurred to the separate causes of action on the grounds: (a) That the facts stated do not constitute a cause of action against the defendant; and (b) that chapter

42 of the Session Laws of the territory above referred to is unconstitutional and void for the following reasons: First, that the tax imposed is a property tax in the guise of a license tax; and second, that the act embraces more than one subject, and that the subject thereof is not embraced in the title.

The title of the act and sections 1, 2, 3, 10, and 11 are especially involved in these objections.

John Rustgard, Atty. Gen., for the Territory.

John A. Clark, of Fairbanks, for defendant.

CLEGG, District Judge. All the provisions of the act are criticized by counsel, but the court's consideration of them is limited to the scope of the grounds assigned and relied upon by the demurrer.

It is conceded by the parties that the defendant has paid the license fee prescribed by section 1 of the act under consideration. A decision on subdivision "b" of the demurrer will cover the entire grounds thereof.

The court recognizes the rule to be that every presumption is in favor of the validity of legislative acts, and the obligation rests on the court to so construe them as to make them operative. State v. Bowker (Mont.) 205 Pac. 961, 963. In the last-cited case it is said:

"It is a universally recognized rule of construction, in testing the validity of a statute subject to two constructions, one of which will uphold its validity, while the other will condemn it, that the former will be adopted if it can be done without violence to the fair meaning of the words employed. State v. Kahn, 56 Mont. 108, 182 Pac. 107."

In the case of State v. State Board of Equalization, 56 Mont. 413, 185 Pac. 708, 186 Pac. 697, it is said: "Every reasonable doubt" favors the validity of the statute. This is also the rule in the state of Oregon:

"It may be premised that courts will not pronounce an act of the Legislature void or unconstitutional, unless such unconstitutionality clearly appears beyond a reasonable doubt." Cline v. Greenwood, 10 Or. 230; Kadderly v. Portland, 44 Or. 118, 74 Pac. 710, 75 Pac. 222; State v. Walton, 53 Or. 557, 99 Pac. 431, 101 Pac. 389, 102 Pac. 173; Straw v. Harris, 54 Or. 424, 103 Pac. 777; Miller v. Henry, 62 Or. 4, 124 Pac. 198, 41 L. R. A. (N. S.) 97; Pleasant Grove City v. Holman (Utah) 202 Pac. 1098.

It is also said by Chief Justice Waite in the Sinking Fund Cases, 99 U. S. 718, 25 L. Ed. 504:

"Every possible presumption is" indulged "in favor of the validity of a statute, and this continues until the contrary is shown beyond a rational doubt."

Mr. Justice Peckham, in Nicol v. Ames, 173 U. S. 515, 19 Sup. Ct. 522, 43 L. Ed. 786, said:

"It is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest."

This is the undoubted rule of decision, as applied in a great number of cases both by the Supreme Court and the inferior federal courts.

In the case of The Abby Dodge, 223 U. S. 175, 32 Sup. Ct. 310, 56 L. Ed. 390, Mr. Chief Justice White, speaking of a statute of the United States, said:

"This follows because of the elementary rule of construction that, where two interpretations of a statute are in reason admissible, one of which creates a repugnancy to the Constitution and the other avoids such repugnancy, the one which makes the statute harmonize with the Constitution must be adopted."

The court approaches the consideration of the question to be determined in the light of the foregoing decisions. I must also ascertain, if possible, from the act itself and the declaration of the Legislature therein, its main purpose. "The declared purpose of the act has to be accepted as true, unless incompatible with its meaning and effect." White Dental Mfg. Co. v. Commonwealth, 212 Mass. 35, 98 N. E. 1056, Ann. Cas. 1913C, 805. See, also, Camas Stage Co. v. Kozer (Or.) 209 Pac. 96.

In Flint v. Stone Tracy Co., 220 U. S. 145, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the Supreme Court says:

"While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight."

It will be seen that the title of the act is "To impose a license tax on the business," etc. A license tax on business is

not new in this territory. We not only have a license tax on business imposed by the federal government, but we have previously had two acts of the Legislature with reference to license taxes on business. Session Laws 1913, c. 52, approved May 1, 1913; also Session Laws 1915, c. 76, approved April 29, 1915. The validity of these acts on certain classes of business has been uniformly sustained. Alaska Fish, Salting & By-Products Co. v. Smith, 255 U. S. 44, 41 Sup. Ct. 219, 65 Law Ed. 489; Alaska-Pacific Fisheries v. Alaska, 236 Fed. 52, 149 C. C. A. 262; Hoonah Packing Co. v. Alaska, 236 Fed. 61, 149 C. C. A. 271; Alaska Salmon Co. v. Alaska, 236 Fed. 62, 149 C. C. A. 272; Alaska-Mexican Gold Mining Co. v. Alaska, 236 Fed. 64, 149 C. C. A. 274; Alaska-Pacific Fisheries v. Alaska, 236 Fed. 70, 149 C. C. A. 280.

In the above case of the Alaska Fish, Salting & By-Products Co. v. Smith, the court, by Mr. Justice Holmes, says:

"The provisions against taxing in excess of one per centum of the assessed valuation of property do not apply to a license tax like this. This is not a property tax."

The court can see no difference in principle from a license tax of $2 a barrel and $2 a ton, respectively, upon persons engaged in the business of manufacturing fish oil, fertilizer, and fish meal, in whole or in part, from herring, and the license tax required of persons engaged in fur farming, trapping, and trading in pelts and skins of fur-bearing animals.

Counsel for the defendant contends as follows:

"The defendant contends that, while the Legislature was authorized to impose as a license tax as a condition to the conducting of business by the defendant, and that they could have elected to make an absolutely arbitrary tax of any given amount, even a tax so high that it would have been confiscatory of their property, or they could have levied an excise tax based upon the gross or net business done by the fur buyer or dealer, yet when they attempted to levy a tax upon each piece of property handled by the fur buyer or dealer under his license, that they were then levying an ad valorem on the rem and that this tax was not levied in accordance with the provisions of the organic act; that is to say, no attempt was made to ascertain the actual value of the property taxed, but an arbitrary amount was fixed upon each pelt, and that at a rate far in excess of the total taxable rate that might be fixed by the Legislature."

This argument is based upon the fact that the Legislature, in section 1 of the act, prescribes a preliminary license fee of

$10 for the business of fur farming, $25 for stationary fur buyers, and $150 for itinerant fur buyers, and that section 3 says:

"In addition to the license fee above provided for the licensee shall pay to the commissioner who issued the license the following license fees on each pelt taken by a fur farmer, or purchased or otherwise acquired by a fur buyer, or taken by a trapper and not sold to a licensed fur buyer, to wit."

Then follows a designation of the various kinds of skins of fur-bearing animals, followed by the amount of license tax payable upon each kind.

The Legislature might have incorporated all of section 3 into section 1, if they had chosen to do so; but it is clear that the two sections must be read together and given effect accordingly, and that the clear intent of the Legislature was to require persons engaged in. the designated businesses to declare themselves before the commissioner and pay the preliminary license fee, and at the conclusion of their year's business to pay the amounts due to the territory, based and computed upon the number and kinds of skins taken, purchased, or otherwise acquired, so that the method they adopted, according to their lights, was a fair and equitable method of determining the measure or quantum of the license tax payable. While the method adopted by the Legislature may be subject to some criticism, it cannot be fairly said that the license fees imposed are a tax upon the property.

In the case of Alaska-Mexican Gold Mining Co. v. Territory, supra, the Circuit Court of Appeals, through Circuit Judge Hunt, says:

"It will be readily granted that the act is not as explicit as it should be, and that its application calls for a postponement of the payment of the tax until the amount of revenue from the business taxed can be ascertained; but the fact that it is inartificially drawn and that its exact enforcement may be difficult ought not to make it invalid, if the language used expresses a plain meaning by the lawmaking body. * * * The intention being plain, the inartificiality of the law should not result in its overthrow"—citing Johnson v. Southern Pacific, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Cliquot's Champagne, 70 U. S. (3 Wall.) 114, 18 L. Ed. 116; U. S. v. Stowell, 133 U. S. 1, 12, 10 Sup. Ct. 244, 33 L. Ed. 555.

While it is true that any business engaged in for profit is property in a sense, the license fees imposed by this Act are

clearly in the nature of an excise for the privilege of carrying on business and in no sense a property tax.

The defendant earnestly relies upon the case of Thompson v. McLeod, 112 Miss. 383, 73 South. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674, in contending that the tax imposed by the act in question is a property tax. In that case the court says:

"The act here assailed does not even attempt to require a license or permit to be issued by any officer or department of the government as a condition precedent to the right of a citizen to extract crude turpentine from pine trees."

Further it says:

"Section 1 of the act makes no effort to conceal the subject-matter of the tax. It expressly declares that it is 'levied on the gross annual cutting or extraction.'"

Further on it says:

"Appellee, in taking crude gum from his own trees, is not directly engaged in any kind of mercantile business. He does not bring his wares into the market place nor upon stock markets."

There is no question in this particular case as to whether the occupation of fur farming, stationary fur buyer, or trapper is a business or occupation upon which the Legislature may lawfully impose license fees for the privilege of engaging in the business. Furthermore; a property tax is an incident of ownership, while in the business of a stationary fur buyer the person so engaged may "purchase or otherwise acquire," as the act says, raw skins of bur-bearing animals in this country without necessarily having any ownership therein himself.

I therefore hold that the provisions of the act do not contravene section 9 of the Organic Act (U. S. Comp. St. § 3536), which provides that—

"all taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessment shall be according to the actual value thereof. No tax shall be levied for territorial purposes in excess of one per centum upon the assessed valuation of property therein in any one year."

Section 8 of the Organic Act (Act Cong. Aug. 24, 1912, 37 Stat. 512 [U. S. Comp. St. § 3535]) provides:

"That the enacting clause of all laws passed by the Legislature shall be, 'Be it enacted by the Legislature of the territory of

Alaska.' No law shall embrace more than one subject, which shall be expressed in its title."

It is contended by the defendant that the act assailed violates this provision of the Organic Act, and that it in effect imposes a license tax, but really imposes a property tax, and in addition thereto provides penalties for failure to abide by the various terms of the act, and further provides for imprisonment for failure to abide by the provisions of the law.

From what I have said heretofore, I find no merit in the contention that this act imposes anything more than a license tax; but it does provide for certain penalties for failure to observe its requirements. These requirements, however, are the same as those imposed in all previous acts of the Legislature and of Congress with reference to business taxes, and the court, in considering this particular act must take notice of previous legislation on the subject.

It is contended by counsel that this provision of the organic act is mandatory, and in this the court agrees; but it is not necessary that the subject-matter, as expressed in the title of the act, under this constitutional requirement, should give an index of all the provisions of the act.

In the case of In re County Commissioners, 22 Okl. 435, 98 Pac. 557, in discussing a similar constitutional provision, the court says:

"The abuses which called such provision into existence are clearly understood, and are twofold. Each subject brought into the deliberation of the legislative department of the government is to be considered and voted on singly, without having associated with it any other measure to give it strength. Experience had shown that measures having no common purpose, and each wanting sufficient support on its merits to secure its enactment, have been carried through legislative bodies and enacted into laws, when neither measure could command or merit the approval of a majority of that body.

"The other abuse against which this provision was leveled was to prevent matters foreign to the main objects of a bill from finding their way into such enactment surreptitiously. Substantially such a provision is found in many of the state Constitutions, and, as is usual in such cases, judges have differed in their interpretation of the same. The best-considered cases, however, appear to have established the following propositions: That the clause is mandatory; that its requirements are not to be exactingly enforced, or in such a technical manner as to cripple legislation; that the title of a bill may be very general, and need not contain

an abstract of the contents of the bill, or specify every clause therein, it being sufficient if they are all referable and cognate to the subject expressed. Everything which is necessary to make a complete enactment, or to result as a complement of the thought therein contained, is included in and authorized by such title expressed in general terms. Weaver et al. v. Lapsley, 43 Ala. 224; Walker v. State, 49 Ala. 329; Lockhart v. City of Troy, 48 Ala. 579; Ballentyne v. Wickersham, 75 Ala. 535; State v. Rogers, 107 Ala. 444, 19 South. 909, 32 L. R. A. 520; Lindsay v. United Savings & Loan Association et al., 120 Ala. 172, 24 South. 171, 42 L. R. A. 783; Woodson v. Murdock, 22 Wall. 351, 22 L. Ed. 716; State ex rel. v. Squires, 26 Iowa, 340; Cannon v. Mathes, 8 Heisk. (Tenn.) 504; State v. Miller, 45 Mo. 495; Chiles v. Drake, 2 Metc. (Ky.) 146, 74 Am. Dec. 406; Keller v. State, 11 Md. 525, 69 Am. Dec. 226; Simpson v Bailey, 3 Or. 515; Lafon v. Defrocq et al., 9 La. Ann. 350." State v. Gerhart, 44 N. E. 475, cited with approval and followed in State v. Bonner (Okl.) 208 Pac. 827.

Giving effect to the rules therein announced, I see no such weakness in the adoption by the Legislature of a broad and comprehensive title in this act as renders the act unconstitutional by reason thereof, nor does such a result follow the failure of the Legislature to state in the title, with the same fullness as in previous acts on the same subject, the contents thereof. There is no possibility that any of the abuses which this constitutional provision was intended to prevent arose by the use of a broad, general, and comprehensive title. The court also holds by necessity that the subject of the act is clearly expressed in the title.

Other criticisms leveled in the brief at other sections of the act are unsubstantial, and do not fairly arise under the issues.

The demurrer may be overruled.