**NICHOLS, Collector of Internal Revenue, v. GASTON et al.**

(Circuit Court of Appeal, First Circuit. March 21, 1922.)

No. 1543.

1. **Internal revenue ⬅⟶28—Taxpayer held to have adequate legal remedy for premature collection of tax, which precluded suit for injunction.**

Under Rev. St. § 3220, as amended by Act Feb. 24, 1919, § 1316 (a), being Comp. St. Ann. Supp. 1919, § 5944, authorizing the Commissioner of Internal Revenue to repay to any collector such sums of money as may be recovered against him for any internal taxes collected by him, as "also all damages and costs" recovered against him, a taxpayer has an adequate remedy at law for recovery of any damages sustained by him by reason of the premature collection of a tax by the collector, with interest thereon, and cannot maintain a suit in equity to enjoin collection of the tax.

2. **Internal revenue ⬅⟶28—Suit to enjoin collection of estate tax held not maintainable.**

Under Act Feb. 24, 1919, § 404 (Comp. St. Ann. Supp. 1919, § 6336¾e), providing that the Commissioner of Internal Revenue shall make all assessments of estate taxes "under the authority of existing administrative special and general provisions of law" for the assessment and collection of taxes, and Rev. St. § 3182 (Comp. St. § 5904), providing that the Commissioner shall certify a list of the assessments made by him to the proper collectors, "who shall proceed to collect", the taxes, a collector, in proceeding to collect an estate tax so certified to him, is acting in the course of his official duty, and section 3224 (Comp. St. § 5947) prohibits any court from entertaining a suit to restrain such collection.

Appeal from the District Court of the United States for the District of Massachusetts as to a decree entered pro forma following the ruling in Page v. Polk, 276 Fed. 128; George W. Anderson, Judge.

Suit in equity by William A. Gaston and another, executors, against Malcolm E. Nichols, individually and as Collector of Internal Revenue. Decree for complainants, and defendant appeals. Reversed.

Frederic S. Harvey, Asst. U. S. Atty., of Lowell, Mass., and J. G. Korner, Jr., Sp. Atty. of Bureau of Internal Revenue, of Washington, D. C. (Robert O. Harris, U. S. Atty., of Boston, Mass., and Carl A. Mapes, Solicitor of Internal Revenue, of Washington, D. C., on the brief), for appellant.

Dunbar F. Carpenter, of Boston, Mass. (John K. Howard and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for appellees.

Selden Bacon, of New York City, amicus curiæ.

Before BINGHAM and JOHNSON, Circuit Judges, and MORRIS, District Judge.

BINGHAM, Circuit Judge. This is an appeal from a final decree of the District Court for Massachusetts in a suit in equity brought by Gaston and Falvey, executors of the estate of James M. Prendergast, against Nichols, individually and as collector of internal revenue for the district of Massachusetts, restraining the latter from collecting a tax assessed against the estate.

⬅⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The complainants and the defendant are citizens of Massachusetts. Prendergast died November 29, 1920. The complainants duly filed their return, setting forth the value of the estate, and the Commissioner of Internal Revenue assessed thereon a tax of $83,900.36, under title IV of the Revenue Act of February 24, 1919 (40 Stat. at Large, 1096 [Comp. St. Ann. Supp. 1919, §§ 6336¾a–6336¾k]). The jurisdiction of the District Court, as a federal court, is invoked on the ground that the suit is one arising under the internal revenue laws of the United States.

It is conceded that the tax of $83,900.36 assessed against the estate is legal and proper. The contention of the complainants is that, under section 408 of the act of 1919 (Comp. St. Ann. Supp. 1919, § 6336¾i), they are given a year and 180 days after their testator's death in which to pay the tax, even though the Commissioner of Internal Revenue had not extended the time of payment, under section 406 (section 6336¾g), for 180 days after its due date, and that the defendant was not authorized to enforce its collection by distraint or otherwise until after the expiration of the 180 days; that, in violation of this right, the defendant, pretending to act in his capacity as collector, on the 4th of January, 1922, and before the 180 days had expired, notified the complainants that, unless the tax was paid within 10 days, he should proceed to collect the same, with costs, by seizure and sale of property; that, under section 408 of the act of 1919, the collector is prevented from collecting the tax by distraint or otherwise within the 180 days; and that the threatened seizure, if carried out, would have been unauthorized, and an act not done by him in his official capacity or with color of law. They further contend and allege in their bill that if, to avoid such threatened distraint, they at this time paid the tax, they would be remediless in law, as they had the privilege, under section 406, of paying the tax at any time down to May 28, 1922, without interest. It was also alleged in the bill that the payment of the tax at the time of the commencement of the suit, rather than on May 28, 1922, would subject the estate to a loss of interest on the money during the interim of about $3,000, and would subject the estate to the difficulty of converting the assets into cash for the immediate payment of a large sum of money. But it appears in the final decree that it was stipulated in open court that the complainants had, at the time of the commencement of the suit and at the time of entering the decree, assets in their hands sufficient to meet the tax, and that the loss which they would have sustained by the payment would have been the interest on the tax, unless they were able to recover it back from the United States.

The basis of the decree was that the payment of the tax was "not required by law or compellable by distraint until one year and 180 days after the death of" the decedent; that payment of the tax at the time of the filing of the bill, instead of in May, 1922, "would have subjected the estate * * * to loss of interest on the money so paid during the interim, amounting to the sum of approximately $3,000"; and that if, to avoid the threatened distraint, the complainants should "pay such tax prior to May 28, 1922, they would be remediless in the law."

The questions sought to be raised are (1) whether, on the facts herein stated, the complainants are entitled to injunctive relief; and (2) whether, in view of section 3224 of the Revised Statutes (Comp. St. § 5947), which provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court," this proceeding can be maintained.

We think that there can be no doubt but that the District Court, as a federal court, had jurisdiction authorizing it to entertain the proceeding, as it involves a controversy arising under the laws of the United States, and that the broad questions are whether, on the admitted and agreed facts, that court, as a court of equity, was warranted in granting the injunction, especially in view of the provisions of section 3224.

[1] It is a well-recognized rule that a court of equity will not grant injunctive relief to complainants who have a remedy at law, in the absence of a showing that the legal remedy is inadequate. If, on the facts in this case, the complainants would have had a remedy at law to redress their alleged injury, it cannot be contended that it would have been inadequate, for the reason that the damages suffered would have been irreparable, as it appears that the only loss they would have sustained, had they paid the tax when demanded, would have been the loss of the use of the money during the balance of the 180 days, or in the vicinity of $3,000.

The question therefore is, so far as equity jurisdiction is concerned, whether the complainants would have been without a legal remedy provided they had paid the tax under protest at the time of its demand.

Under title XIII of the Revenue Law of 1919—General Administrative Provisions, section 1316 (a), being Comp. St. Ann. Supp. 1919, § 5944—it is provided:

"Sec. 1316 (a). That section 3220 of the Revised Statutes is hereby amended to read as follows:

" 'Sec. 3220. The Commissioner of Internal Revenue, subject to regulations prescribed by the Secretary of the Treasury, is authorized to remit, refund, and pay back all taxes erroneously or illegally assessed or collected, all penalties collected without authority, and all taxes that appear to be unjustly assessed or excessive in amount, or in any manner wrongfully collected; also to repay to any collector or deputy collector the full amount of such sums of money as may be recovered against him in any court, for any internal revenue taxes collected by him, with the cost and expenses of suit; also all damages and costs recovered against any assessor, assistant assessor, collector, deputy collector, agent, or inspector, in any suit brought against him by reason of anything done in the due performance of his official duty, and shall make report to Congress at the beginning of each regular session of Congress of all transactions under this section.' "

This provision of law was first enacted July 13, 1866 (14 Stat. at Large, p. 111), and as above set forth is, so far as concerns the question here considered, the same as when first enacted. It thus appears from the language of the act that, had the complainants paid the tax under protest at the time it was demanded, they could have recovered judgment against the collector for all damages they sustained, if the collection was premature and they were thereby damaged. City of Philadelphia v. Diehl (decided Dec., 1866) 5 Wall. 720, 731, 18 L. Ed.

614; Moore v. Miller, 5 App. D. C. 413, 429. And the following decisions disclose that they would have been entitled to interest on the damages sustained down to the entry of final judgment (Cochran v. Schell, 107 U. S. 625, 2 Sup. Ct. 827, 27 L. Ed. 543; Kinney v. Conant, 166 Fed. 720, 92 C. C. A. 410), and that, upon a certificate of probable cause by the court, under section 989 of the Revised Statutes (Comp. St. § 1635), the liability of the government to pay the judgment would attach (United States v. Sherman, 98 U. S. 565, 25 L. Ed. 235; Erskine v. Van Arsdale, 15 Wall. 75, 21 L. Ed. 63; National Volunteer Home v. Parrish, 229 U. S. 494, 496, 33 Sup. Ct. 944, 57 L. Ed. 1296; Sage v. United States, 250 U. S. 33, 37, 39 Sup. Ct. 415, 63 L. Ed. 828; Smietanka v. Indiana Steel Co. [decided October 24, 1921] 257 U. S. 1, 42 Sup. Ct. 1, 66 L. Ed. ——).

The fact that interest on the judgment, after it becomes final, as defined in Cochran v. Schell, supra, does not run against the government (it being presumed that the government is always ready and able to pay), has never been regarded as rendering the remedy at law inadequate.

We are therefore of the opinion that the complainants have failed to show that they would have had no remedy at law. On the contrary, it would seem that they would have had a legal remedy by which they might have been reimbursed for all damages sustained, in case it should be found that the defendant was not authorized to demand and enforce the collection of the tax within the 180 days after it became due, and that the court below was without authority to grant the injunction, irrespective of the inhibition contained in section 3224 of the Revised Statutes.

In view of the conclusion reached, we do not feel called upon to decide whether section 3224 imposes upon a court of equity any greater restraint as to enjoining the assessment and collection of a tax than it would properly be called upon to exercise had the statute not been enacted. The remedy at law is regarded as exclusive, and, in the absence of extraordinary circumstances, such as would warrant the interposition of a court of equity, has always been held to be exclusive.

In United States v. Pacific R. R., 4 Dill. 66, 70, Fed. Cas. No. 15983, Mr. Justice Miller, sitting as Circuit Justice for the Eastern District of Missouri, in speaking of the legal remedy afforded by section 3220 of the Revised Statutes, said:

"And we have said over and over again in our courts that that was a complete and exclusive system of correctional justice in regard to the collection of taxes unjustly assessed; that it was the only system, and by that ruling we abide. There can be no such thing as obstructing and objecting to the payment, as in the case of adjusting the accounts of individuals."

[2] It would seem, however, that the inhibition of section 3224 applies to all assessments or collections of internal revenue taxes made or attempted to be made under color of office by internal revenue officers charged with general jurisdiction over the assessment and collection of such taxes, and that, if the Commissioner of Internal Revenue, in assessing a tax, or the collector, in collecting it, acts under

color of his office, section 3224 applies, and that no suit to restrain the assessment or collection of the tax can be maintained.

In Dodge v. Osborn, 240 U. S. 118, 36 Sup. Ct. 275, 60 L. Ed. 557, Chief Justice White, in speaking of sections 3220 and 3224, said:

"The plain purpose and scope of the sections are thus stated in Synder v. Marks, 109 U. S. 189, 193, 194, a suit brought to enjoin the collection of a revenue tax on tobacco:

"'The inhibition of Rev. Stat. § 3224, applies to all assessments of taxes, made under color of their offices, by internal revenue officers charged with general jurisdiction of the subject of assessing taxes against tobacco manufacturers. The remedy of a suit to recover back the tax after it is paid is provided by statute, and a suit to restrain its collection is forbidden. The remedy so given is exclusive, and no other remedy can be substituted for it. * * * Cheatham v. United States, 92 U. S. 85, 88. And again in State Railroad Tax Cases, 92 U. S. 575, 613, it was said by this court that the system prescribed by the United States in regard to both customs duties and internal revenue taxes, of stringent measures, not judicial, to collect them, with appeals to specified tribunals, and suits to recover back moneys illegally exacted was a system of corrective justice intended to be complete, and enacted under the right belonging to the government to prescribe the conditions on which it would subject itself to the judgment of the courts in the collection of its revenues. In the exercise of that right, it declares, by section 3224, that its officers shall not be enjoined from collecting a tax claimed to have been unjustly assessed, when those officers, in the course of general jurisdiction over the subject-matter in question, have made the assignment (assessment) and claim that it is valid.'"

In Dodge v. Osborn it was held that it was "no longer open to question that a suit may not be brought to enjoin the assessment or collection of a tax because of the alleged unconstitutionality of the statute imposing it"; that averments that unless the tax were enjoined many suits by other persons would be brought for recovery of the taxes paid by them, and that the taxes assessed would be a lien upon the plaintiff's property constituting a cloud thereon, were wholly inadequate to sustain jurisdiction; and that the statute plainly forbids the enjoining of a tax "unless by some extraordinary and entirely exceptional circumstance its provisions are not applicable."

No question is raised in this case as to the authority of the Commissioner to assess the tax or as to the legality of the tax which he assessed. It is claimed, however, that the defendant, in undertaking to collect the tax, was acting without color of authority; that his acts were purely ministerial and in no way involved the exercise of discretion.

By section 1305, title XIII, of the act of 1919 (Comp. St. Ann. Supp. 1919, § 6336½c), it is provided:

"Sec. 1305. That all administrative, special, or stamp provisions of law, including the law relating to the assessment of taxes, so far as applicable, are hereby extended to and made a part of this act, and every person liable to any tax imposed by this act, or for the collection thereof, shall keep such records and render, under oath, such statements and returns, and shall comply with such regulations as the Commissioner, with the approval of the Secretary, may from time to time prescribe."

By section 404, title IV, of the act of 1919 (section 6336¾e), it is provided:

"Sec. 404. * * * The Commissioner shall make all assessments of the tax under the authority of existing administrative special and general provisions of law relating to the assessment and collection of taxes."

By section 3182 of the Revised Statutes (Comp. St. § 5904), it is provided:

"Sec. 3182. The Commissioner of Internal Revenue is hereby authorized and required to make the inquiries, determinations, and assessments of all taxes and penalties imposed by this title, or accruing under any former internal revenue act, where such taxes have not been duly paid by stamp at the time and in the manner provided by law, and shall certify a list of such assessments when made to the proper collectors respectively, who shall proceed to collect and account for the taxes and penalties so certified," etc.

And sections 3183, 3184, and 3187 (sections 5905, 5906, 5909) provide:

"Sec. 3183. It shall be the duty of the collectors, or their deputies, in their respective districts, and they are authorized, to collect all the taxes imposed by law, however the same may be designated," etc.

"Sec. 3184. Where it is not otherwise provided, the collector shall in person or by deputy, within ten days after receiving any list of taxes from the Commissioner of Internal Revenue, give notice to each person liable to pay any taxes stated therein, to be left at his dwelling or usual place of business, or to be sent by mail, stating the amount of such taxes and demanding payment thereof. If such person does not pay the taxes, within ten days after the service or the sending by mail of such notice, it shall be the duty of the collector or his deputy to collect the said taxes with a penalty of five per centum additional upon the amount of taxes, and interest at the rate of one per centum a month."

"Sec. 3187. If any person liable to pay any taxes neglects or refuses to pay the same within ten days after notice and demand, it shall be lawful for the collector or his deputy to collect the said taxes, with five per centum additional thereto, and interest as aforesaid, by distraint and sale, in the manner hereafter provided, of the goods, chattels, or effects, including stocks, securities, and evidences of debt, of the person delinquent as aforesaid," etc.

By section 1307, title XIII, of the act of 1919 (Comp. St. Ann. Supp. 1919, § 6371½g), it is provided:

"Sec. 1307. That in all cases where the method of collecting the tax imposed by this act is not specifically provided in this act, the tax shall be collected in such manner as the Commissioner, with the approval of the Secretary, may prescribe," etc.

See article 116 of the Regulations for remedies prescribed for collection of tax.

These provisions of law vested the Commissioner of Internal Revenue with authority to assess the tax in question and to certify the same in his list to the defendant for collection, whose duty it was to proceed and collect the tax in accordance with his precept. The Commissioner, in issuing his list to the defendant for the collection of the tax, necessarily determined that the tax was due and payable, that no postponement of the time of payment had been granted, and that the defendant should proceed forthwith to collect it. It appears by article 90 of the Rules and Regulations issued by the Commissioner, with the approval of the Secretary of the Treasury, construing section 406, that the estate tax is due and payable one year from the date of death, and by article 93 that the time of payment is to be extended only in case the Commissioner finds that payment of the tax one year from the date of death would impose undue hardship upon the estate. It cannot, therefore, be well claimed that the defendant, in proceeding under his precept and demanding payment of the tax, was not acting under

color of authority or of his office; the Commissioner of Internal Revenue having, in the exercise of his general jurisdiction and with the approval of the Secretary of the Treasury, determined that the tax was due and payable at the end of one year from the death of the decedent and issued his list or precept for its collection. Moore v. Miller, supra, 5 App. D. C. 430.

, If, under section 406 and the Regulations, the tax is due and payable at the expiration of a year from death, where no postponement has been granted, then the provisions of sections 406 and 408 are entirely consistent with one another, and there is nothing in either section incompatible with action by the collector, upon receipt of the list, in forthwith demanding payment of the tax under section 3184, and, if it is not paid, issuing a distraint warrant and enforcing collection by distraint under section 3187.

Indeed, it is quite probable that the correct interpretation of section 406 is that the tax is due and collectible one year after decedent's death, in the absence of a postponement of the time of collection for cause shown; that, if no postponement from the due date is procured, payment is demandable forthwith, with the right to invoke the usual remedies for its collection; that if a postponement is obtained for 180 days, and the tax is paid on or before the expiration of that time, no interest charge is to be made; that, if the tax is not paid on or before the expiration of the postponed period of 180 days, then interest for the 180 days is to be added to the tax, and, under section 408, the collector is thereupon to proceed to collect the tax and avail himself of the usual remedies, unless the time of payment is further delayed or extended by the Commissioner; that section 408, by requiring the collector, if the tax has not been paid within the 180 days after it is due, to then proceed to collect it under the provisions of general law, etc., unless there is reasonable cause for further delay, recognizes there has been a previous delay in its collection and that it was for cause, the cause provided for in section 406; and that section 408 is not in conflict with section 406 as to time of collection, but supplementary thereto and in harmony therewith. We do not, however, find it necessary to construe the law.

The only case called to our attention in which a court has granted an injunction restraining federal officials in the collection of a tax since section 3224 was enacted in 1867, is Frayser v. Russell, 3 Hughes, 227, Fed. Cas. No. 5,067. But an examination of that case discloses that what the collector was asserting to be a tax was not a tax; that the collector had attempted to assess the tax himself, whereas, under section 3371 of the Revised Statutes (Comp. St. § 6180), it was made the duty of the Commissioner of Internal Revenue to make the assessment and certify the same to the collector. As the Commissioner of Internal Revenue had not assessed the tax and certified it to the collector, the latter had neither a tax to collect nor color of authority for its collection.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to enter a decree of dismissal, with costs in this court and the court below to the appellant.