## WOERISHOFFER ET AL., EXECUTORS *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 11. Argued October 7, 1925.—Decided November 16, 1925.

1. Upon the facts recited in the opinion, *held,*

(*a*) That certain legacy taxes, assessed under § 29 of the Spanish War Revenue Act, were " imposed " prior to July 1, 1902, within the saving clause of the repealing Act, c. 500, § 7, 32 Stat. 96, although the formal assessment by the Treasury Department was not made before that date. *Cochran* v. *United States,* 254 U. S. 387. P. 109.

(*b*) That interests of residuary legatees in a portion of the estate not distributed prior to July 1, 1902, were not contingent beneficial interests not absolutely vested in possession or enjoyment prior to July 1, 1902, within the meaning of § 3 of the Act of June 27, 1902, c. 1160, 32 Stat. 406. *Kahn* v. *United States,* 257 U. S. 244; *Simpson* v. *United States,* 252 U. S. 547. P. 109.

2. Where the Court of Claims overruled, without prejudice, a demurrer to the petition, and ordered the testimony limited to certain features of the case, objection to the making of the order, or to the findings of fact covering the entire case, should have been made in that court, as a basis for objection in this court on appeal. P. 109.

58 Ct. Cls. 410, affirmed.

APPEAL from a judgment of the Court of Claims dismissing the petition in a suit to recover money voluntarily paid as legacy taxes.

*Mr. H. T. Newcomb,* for appellants.

In this case the record shows that the basis for determining the value of the large volume of securities held in the estate, for the purposes of the New York inheritance or transfer tax, was in litigation, which was not determined until after July 1, 1902, and that, when a return was made under the Act of June 13, 1898, long after July 1, 1902, the values assigned " for the most part were arithmetical averages of New York Stock Exchange prices or quotations on similar stocks and bonds during the three-months period immediately preceding the testator's decease. These values were in most instances different from the par or face values of such stocks and bonds, and were also in most instances different from the values assigned thereto by the executors in their distribution of them to the residuary legatees as a part of the residuary estate." (Finding of fact.)   Even these arbitrarily determined values were disputed at the first opportunity by the Commissioner of Internal Revenue, who applied a different price to certain of the securities in 1914.   The estate here represented was not settled on July 1, 1902; and funds in the hands of the executors remained liable for debts of the estate; but there is no reliance on these facts to establish the uncertainty now claimed.   The present claim of uncertainty requiring administrative assessment rests upon the character and qualities of the assets of the estate.   " The actual or clear value of said bonds and shares of stock and other assets of said estate could not be determined except by inquiry and investigation and the consideration of evidence therein."

The second section of the Act of July 27, 1912, requires the Secretary of the Treasury to refund legacy taxes illegally or erroneously assessed or collected under color

of the Act of June 13, 1898. If appellants are correct in their views, the whole sum exacted in respect of the interests of the three residuary legatees, except the portion exacted in respect of their legacies of $100,000.00 each, was erroneously and illegally assessed and collected and the amount thereof now retained should be refunded. The interests of the residuary legatees in that portion of the estate not distributed prior to July 1, 1902, were, on that date, contingent beneficial interests not absolutely vested in enjoyment or possession within the meaning of the Act of June 27, 1902, and any tax exacted in respect thereof in December, 1902, was illegally collected and should be refunded in compliance with the Act of July 27, 1912.

The conditions which removed the practical element of contingency in *Simpson* v. *United States,* 252 U. S. 547, do not exist in this case. The record shows that distribution kept pace with the possibilities of sound and reasonable administration; funds were not retained beyond the legitimate necessities of protection to the estate and the executors; and the margin held by the executors was at all times after July 1, 1902, a barely safe and workable margin. What, if anything, the residuary legatees would thereafter receive must have been uncertain and indefinite on July 1, 1902, and therefore their interests in the amounts thereafter becoming available were, on that date, and in the practical sense of the Act of June 27, 1902, contingent and not absolutely vested in possession or enjoyment.

*Mr. Alfred A. Wheat,* Special Assistant to the Attorney General, with whom *Solicitor General Mitchell* and *Mr. Randolph S. Collins,* Attorney in the Department of Justice, were on the brief, for the United States.

The Government contends that the taxes voluntarily paid can not be recovered, for two reasons:

First. The subject of the tax or duty exacted by § 29 being predicated upon the right of succession which

passes by death to a beneficial right of possession or enjoyment of a legacy or distributive share (*Hertz* v. *Woodmen*, 218 U. S. 205, 219,) the liability for the payment of the tax accrued or arose the moment the right of succession by death passed to the claimants, which, as established, happened prior to July 1, 1902, and the occurrence of no other fact or event was essential to the imposition of a " liability " for the statutory tax upon the interest thus acquired. (*Id.* 220.)

There being present a " liability," the statute imposed the tax, which was properly collectible, for, as stated by this Court in the *Hertz Case,* " The plain purpose of the saving clause [in the repealing Act of April 12, 1902], was to preserve some liability which had been imposed under § 29 which would otherwise be lost. This it did by providing that all taxes 'imposed' prior to the going into effect of the act should, notwithstanding the repeal of the section which originated the tax, be preserved, and as to collection, lien, etc., be subject to the unrepealed section 30." (*Id.* pp. 221, 222.) Indeed, under the amendment of March 2, 1901, c. 806, 31 Stat. 948, making the tax due and payable within one year after the death of the testator, the time of payment was advanced so as to require payment within one year if there should be longer delay in paying the legacies. In the case at bar this statutory period expired on December 14, 1901.

There being, as shown by the Findings of Fact, an absolute right in the claimants to the possession and enjoyment of the legacies—the one-year period provided by the New York law after which payment of the legacies might have been required by the legatees as a matter of right, and the one-year period of limitation provided by the Act of 1901 within which the tax could be paid, both having expired—there was " imposed " a tax or duty exacted upon the right of succession which was preserved by the saving clause of the repealing Act of

April 12, 1902; hence assessment prior to July 1, 1902, became unnecessary. (*Id.* p. 224.)  *King v. United States,* 99 U. S. 229, 233; *United States* v. *Erie Railway Co.,* 107 U. S. 1, 2; *United States* v. *Reading Railroad,* 123 U. S. 113.

Secondly. All of the legatees involved became vested in possession and enjoyment of their respective legacies prior to July 1, 1902, within the meaning of the Spanish War Revenue Act of 1898, as amended, and as interpreted by this Court, either by the absolute payment of the sums required by the will prior to that date or by virtue of the apparent termination by operation of law of the administration of the estate so far as these taxes are concerned; for, as pointed out by this Court in *Simpson* v. *United States,* 252 U. S. 547, 552-553, " It is obvious that legacies which it was thus the legal duty of the executors to pay before July 1, 1902, and for compelling payment of which a statutory remedy was given to the legatees before that date, were vested in possession and enjoyment, within the meaning of the Act of June 27, 1902, as it was interpreted in *United States* v. *Fidelity Trust Co.,* 222 U. S. 158; *McCoach* v. *Pratt,* 236 U. S. 562; and in *Henry* v. *United States,* 251 U. S. 393."

While it is averred that the clear value of the interests of the legatees was at all times prior to July 1, 1902, uncertain and indefinite, and still is so, there stand in opposition the facts of the case and the refutation that an estate of the net personal value of over four and a quarter millions of dollars was or is in danger of embarrassment by the payment of legacies of about three and a half millions of dollars. And we have seen that the executors, who had knowledge of the condition of the estate and all that it might be made subject to, did not hesitate to make a return of the legacies to the Collector of Internal Revenue and pay the taxes thereon. The petition in this case was filed in the Court of Claims January 26, 1916, fifteen years

after the commencement of the administration of the estate, and nearly as long after the time of presentation of claims against it; and the record shows that the total of the claims and expenses for which the personal property was liable amounts to $298,646.12. In the face of this exhibition, you are asked to speculate upon the possibility of the existence of liabilities that fifteen years have not developed.

MR. JUSTICE BRANDEIS delivered the· opinion of the Court.

. On January 26, 1916, the executors of Oswald Ottendorfer of New York City brought this suit in the Court of Claims to recover the sum of $543,708.44 voluntarily paid by them on December 10, 1902, for legacy taxes assessed under the Spanish War Revenue Act. June 13, 1898, c. 448, § 29, 30 Stat. 448, 464, as amended. Section 29 had been repealed by Act of April 12, 1902, c. 500, §: 7, 32 Stat. 96, 98, 99, the repeal to take effect July 1, 1902; but by a proviso all taxes theretofore imposed were continued in force. The time for presenting claims for the refunding of any tax under § 29 alleged to have been illegally assessed or to have been excessive or in any manner wrongfully collected was extended by Act of July 27, 1912, c. 256, 37 Stat. 240. The executors sought recovery of the whole amount paid on the ground that the tax had not been imposed prior to July 1, 1902. Recovery of part of the amount was sought also on the ground that it was assessed upon legacies which had not vested in possession or enjoyment prior to that date. There is no claim here that the assessment was excessive. The lower court dismissed the petition, 58 Ct. Cls. 410. The case is here on appeal allowed June 25, 1923, under § 242 of the Judicial Code.

The testator died on December 14, 1900. His will was duly probated and the executors qualified on· March 28,

1901. There were some specific legacies; a residuary bequest which gave the bulk of the estate to three stepdaughters free from any trust; and a provision that all legacy or inheritance taxes should be paid out of the residue. The assets consisted largely of listed securities. On March 7, 1902, schedules were filed in the Surrogate's Court containing a description and the estimated value of all of the property known by the executors to have been owned by the testator at his death, together with statements of decedent's debts, of the payments for administration expenses, of estimated commissions of the executors, and of further administration expenses. On June 5, 1902, the appraiser appointed by the Surrogate's Court filed his report appraising the property of decedent, but it was not until July 16, 1902, that the Surrogate's order assessing thereon the New York inheritance tax was entered. The value of the personal property which passed to the executors was returned by them as $4,371,947.90. The debts and expenses to be set off against that sum were reported as $298,646.12. The assessment of the tax here in question was made by the Commissioner of Internal Revenue on December 10, 1902, in accordance with the executors' return which had been filed with him on November 7, 1902.

Under the laws of New York, the time for the presentation of claims against the estate had expired before July 1, 1902, and before that date the legatees were entitled to the full payment of their legacies. Under the laws of the United States, Act of March 2, 1901, c. 806, § 11, 31 Stat. 938, 948, the time within which payment of the tax was required to be made had also expired before July 1, 1902. Before that date, all the testator's debts and all the specific legacies had been paid, and each of the residuary legatees had received on account of the residuary bequest, $910,-000, partly in cash and partly " in securities at New York Stock Exchange values " assented to by the legatees. Be-

tween that date and the end of the year 1908 each received in cash further sums aggregating $210,953.66. Some of the assets were still undistributed when the evidence was taken in this suit. The reason why no further or complete distribution of the residuary estate was made by the executors prior to July 1, 1902, was that they anticipated that the estate would be liable for payment of a New York estate transfer tax and the federal inheritance tax, for attorneys' fees and other expenses of administration, and that the exact amount of the residuary estate left for distribution could, therefore, not be definitely determined prior to July 1, 1902.

The contention that the taxes had not been imposed prior to July 1, 1902, because no formal assessment had in fact been made by the Treasury Department before that date is disposed of by *Cochran* v. *United States,* 254 U. S. 387. The contention that the interests of the residuary legatees in that portion of the estate not distributed prior to July 1, 1902, were contingent beneficial interests not absolutely vested in possession or enjoyment is disposed of by *Kahn* v. *United States,* 257 U. S. 244, *Simpson* v. *United States,* 252 U. S. 547, and earlier cases. An objection is made to the procedure pursued in the Court of Claims. The Government originally demurred to the petition. The demurrer was overruled without prejudice, and it was ordered that the testimony be limited to " the question of the amount of the residuary legacies not distributed until after July 1, 1902." Thereafter evidence was taken and the court made its findings. It is urged that the court erred in making findings of fact upon the entire case; that there are some findings inconsistent with allegations of the petition relating to matters other than those named in the order; and that as to such other matters the allegations of the petition must be taken as true. We have not discovered any inconsistency as to any material fact. Moreover, it does not appear that the executors objected

below either to the order restricting the scope of the
evidence or to findings of fact made.

*Affirmed.*