## UNITED STATES v. AYER et al.

(Circuit Court of Appeals, First Circuit. April 23, 1926.)

No. 1902.

1. **Internal revenue ☞2—Provision of Revenue Act providing for assessment and collection of taxes, in so far as it became part of a subsequent section relating to assessment and collection of taxes accruing under prior acts, held not repealed by subsequent act** (Revenue Act 1918, tit. 4, §§ 400–410 [Comp. St. Ann. Supp. 1919, §§ 6336¾a–6336¾k], and title 14, § 1400, subd. "b" [Comp. St. Ann. Supp. 1919, § 6371¾a; Revenue Act 1916 [39 Stat. 756] and amendments; Revenue Act 1921, § 1400 [Comp. St. Ann. Supp. 1923, § 6371⅘m]; Rev. St. § 13 [Comp. St. § 14]).

Revenue Act 1918, tit. 4, §§ 400–410, (Comp. St. Ann. Supp. 1919, §§ 6336¾a–6336¾k), in so far as it became a part of title 14, and section 1400, subd. "b" (Comp. St. Ann. Supp. 1919, § 6371¾a), providing for assessment and collection of taxes, liability for which had accrued under Revenue Act 1916 and its amendments, and directing that assessments and collection be according to the provisions of title 4, was not repealed, nor liability remitted, by Revenue Act 1921, § 1400 (Comp. St. Ann. Supp. 1923, § 6371⅘m), which repealed title 4 in so far as it related to collection of taxes accruing under Revenue Act 1918, and in any event liability for taxes under Revenue Act 1916 and amendments was saved by Rev. St. § 13 (Comp. St. § 14).

2. **Internal revenue ☞28—Government held entitled to sue for federal estate taxes accruing under Revenue Act 1916, though no assessment had been made within four years after such taxes became due** (Revenue Act 1916 [39 Stat. 756], amended by Act March 3, 1917 [39 Stat. 1000], and Revenue Act 1917 [40 Stat. 300]; Revenue Act 1921, § 1322 [Comp. St. Ann. Supp. 1923, § 6371⅘ii]; Revenue Act 1918, §§ 401–409, 1305, 1318 [Comp. St. Ann. Supp. 1919, §§ 6336¾b–6336¾j, 6371½e, 6371½p]; Rev. St. §§ 3213, 3214 [Comp. St. §§ 5937, 5938]).

Revenue Act 1916, amended by Act March 3, 1917, and Revenue Act 1917, itself imposed and assessed federal estate taxes provided for therein, and where Commissioner of Internal Revenue determined that return of executors

was inaccurate and tax paid thereunder insufficient, *held*, action by government would lie to recover balance of tax, though no assessment by Commissioner was made within four years after tax became due, as required by Revenue Act 1921, § 1322 (Comp. St. Ann. Supp. 1923, § 6371⅔ii), in force when amount of deficiency was determined, in view of Revenue Act 1918, §§ 401–409, 1305, 1318 (Comp. St. Ann. Supp. 1919, §§ 6336¾b–6336¾j, 6371½e, 6371½p), and Rev. St. §§ 3213, 3214 (Comp. St. §§ 5937, 5938).

In Error to the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Action by the United States against James C. Ayer and others, as executors of Frederick Ayer. Jugment for defendants (7 F.[2d] 478), and plaintiff brings error. Reversed and remanded.

This is an action of contract brought by the United States against the executors of Frederick Ayer. Judgment for defendants The declaration contains the following allegations:

"1. That at all times hereinafter mentioned, the plaintiff was, and now is, a corporation sovereign and body politic.

"2. That this is an action arising under a law providing for internal revenue, brought to recover taxes due from the defendants.

"3. That on or about the 14th day of March, 1918, Frederick Ayer, being then a resident of (Pride's Crossing) Beverly, in the state and district of Massachusetts, died testate, seized and possessed of real and personal property, tangible and intangible.

"4. That the defendants, James C. Ayer, Charles F. Ayer, and Frederick Ayer, are and at all times herein mentioned were the lawfully appointed, qualified, and acting executors of the estate of Frederick Ayer, deceased, having been appointed executors under the last will and testament of the said Frederick Ayer, deceased, dated the 15th day of January, 1912, having duly qualified as such executors, and letters testamentary upon the estate of the said Frederick Ayer, deceased, having duly issued to the said defendants by the probate court of Essex county, at Salem, Mass.

"5. That the net estate of the said decedent Frederick Ayer, when determined in accordance with the provisions of the Revenue Act of 1916, being an act of Congress entitled 'An act to increase the revenue and for other purposes,' approved September 8, 1916 (39 Stat. 756), as amended by an act of Congress entitled 'An act to provide increased revenue to defray the expenses of the increased appropriations for the army and navy and for the extensions of fortifications and for other purposes,' approved March 3, 1917 (39 Stat. 1000), and the Revenue Act of 1917, being an act of Congress entitled 'An act to provide revenue to defray war expenses, and for other purposes,' approved October 3, 1917 (40 Stat. 300), amounted to $17,923,669.74, and that upon this net estate under the provisions of the aforesaid acts there became due and payable as a federal estate tax the sum of $3,183,-614.77.

"6. That the said executors, under the provisions of the aforesaid acts and pursuant to the regulations of the Commissioner of Internal Revenue, duly promulgated by him and approved by the Secretary of the Treasury, on or about the 8th day of September, 1919 (an extension of time having been duly granted), filed with the United States collector of internal revenue for the Third district of Massachusetts a return for federal estate taxes in and on behalf of the estate of Frederick Ayer, deceased, which return discloses the following:

| | |
|---|---:|
| Real estate | $1,084,935.70 |
| Gifts and transfers | 120,000.00 |
| Stocks and bonds | 3,565,019.11 |
| Shares in jointly owned property | 0.00 |
| Mortgages, notes and miscellaneous | 1,392,381.45 |
| **Total gross estate** | **$6,162,336.26** |

| | | |
|---|---:|---:|
| Funeral expense | | $5,618.42 |
| Administration expense: | | |
| Executor's fee | 15,000.00 | |
| Attorney's fee | 25,000.00 | |
| Miscellaneous | 11,409.87 | |
| Claims against estate: | | |
| Mortgages | 0.00 | |
| Debts of decedent | 1,167,133.06 | |
| Net losses during administration, | 0.00 | |
| Support of dependents | 0.00 | |
| State inheritance tax | 0.00 | |
| Other charges allowed by local law | 0.00 | |
| Specific exemption | 50,000.00 | |
| **Total deductions** | | **1,274,161.35** |
| **Net estate** | | **$4,888,174.91** |

"7. That upon the filing of said return, to wit, on or about the 8th day of September, 1919, the said executors paid to the United States collector of internal revenue for the Third district of Massachusetts, the sum of $661,871.48, such sum being the amount of the tax on said estate as computed by said executors and shown on said return.

"8. That the aforesaid return was incorrect and misleading in that a gross estate

was returned in the sum of $6,162,336.26, whereas in truth and in fact the gross estate was the sum of $19,207,719.45; that deductions were taken in the return in the sum of $1,274,161.35, wherein in truth and in fact the true and correct deduction allowable by law was the sum of $1,284,049.71; that a net taxable estate in the sum of $4,888,174.91 was returned, whereas the true and correct net taxable estate was the sum of $17,923,669.74; and that the tax due on said estate was returned as being $661,871.48, whereas in truth and in fact the correct tax liability was the sum of $3,183,614.77.

"9. That thereafter on or about October 25, 1923, the Commissioner of Internal Revenue, upon review and audit of the said return and upon information obtained by him, determined that the gross estate, deductions, net estate, and the federal estate tax were as follows:

| | |
|---|---:|
| Real estate | $1,080,935.70 |
| Gifts and transfers | 13,103,948.26 |
| Stocks and bonds | 3,612,921.04 |
| Mortgages, notes, and miscellaneous | 1,409,914.45 |
| Total gross estate | $19,207,719.45 |
| Total deductions | 1,284,049.71 |
| Net estate | $17,923,669.74 |
| Total tax | 3,183,614.77 |
| Total tax discharged on basis of return | 661,871.48 |
| Additional tax due | $2,521,743.29 |

"10. That thereafter due notice and demand upon said defendants for the payment of the aforesaid additional tax was made but that the said defendants failed and refused and still refuse to pay the said sum or any part thereof.

"11. That there is due and unpaid from the said defendants to the plaintiff the sum of $2,521,743.29, together with interest thereon from March 14, 1919, to date of payment at the rate of 6 per cent. per annum.

"12. That the Commissioner of Internal Revenue authorizes and sanctions these proceedings.

"Wherefore the plaintiff demands judgment against the defendants James C. Ayer, Charles F. Ayer, and Frederick Ayer, as executors of the estate of Frederick Ayer, deceased, in the sum of $2,521,743.29, together with interest thereon from March 14, 1919, to date of payment at 6 per cent. per annum, together with the costs and disbursements of this action."

To this declaration the defendants demurred substantially on the following grounds: (1) That the matters contained in the declaration were insufficient in law to enable the plaintiff to maintain its action; (2) that it did not set forth an appropriate proceeding to subject the property of the decedent to be sold under the judgment or decree of the court; (3) that the facts stated in the declaration do not show a right on the part of the plaintiff to maintain an action in the present or any form under the existing provisions of the Revenue Act of 1916, approved September 8, 1916, and acts in amendment thereof, in addition thereto and in repeal thereof; (4) that the averments in paragraph 8 of the declaration alone or in connection with other averments therein do not state any grounds of liability of the defendants, either as individuals or in their representative capacity; (5) that the declaration nowhere alleges that the collector or deputy collector made a return and that the Commissioner assessed a tax thereon as by law required in case of a return containing "an incorrect statement of a material fact"; (6) that it appears from the declaration that the total tax shown to be due in the return by the defendants as executors to the collector was paid by the executors and accepted as the payment of a sum of money sufficient in the opinion of the collector to discharge the tax and that the Commissioner did not determine an additional tax due until on or about October 25, 1923, which was not within four years after such tax became due; (7) that it does not appear that the Commissioner made an assessment of the tax in accordance with the statutory requirement that the Commissioner shall make all assessments of the tax under the authority of existing administrative, special and general provisions of law relating to the assessment and collection of taxes; and (9) that it does not appear that the Commissioner made an assessment of the tax within four years after such tax became due.

In the District Court the demurrer was sustained, and judgment was entered for the defendants, from which this writ is prosecuted.

George R. Farnum, of Boston, Mass. (Harold P. Williams, of Boston, Mass., and A. W. Gregg and T. H. Lewis, Jr., both of Washington, D. C., on the brief), for the United States.

Sherman L. Whipple and Edward O. Proctor, both of Boston, Mass. (Charles K. Cobb, of Boston, Mass., on the brief), for defendants in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge (after stating the facts as above). If the United States can maintain this action it was seasonably brought, for it was begun within five years from the time the tax was due. Revenue Act of 1921, title 13, § 1320 (Comp. St. Ann. Supp. 1923, § 6371⅘i).

[1] The liability for the tax that accrued under the act of 1916 was not remitted by the act of 1921. Title 14, § 1400 (b), of the act of 1918 (Comp. St. Ann. Supp. 1919, § 6371¾a), contained provisions for the assessment and collection of taxes, the liability for which had accrued under the act of 1916 and its amendments (Page v. Skinner [(C. C. A.)] 298 F. 731), and directed that their assessment and collection "shall be according to the provisions of title 4 of this act." It is true, as stated by the court below, that section 1400, title 14, of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6371⅘m) repealed title 4 of the act of 1918, but it did not repeal the provisions of section 1400 of title 14 of the Revenue Act of 1918, which contained the saving clause with reference to the assessment and collection of taxes that had accrued under the act of 1916 and its amendments; and while title 4 of the act of 1918 was repealed so far as it related to the assessment and collection of taxes, the liability for which had accrued under the act of 1918, it was not repealed so far as it was embodied in section 1400 of title 14 of the act of 1918 as a provision for the assessment and collection of taxes the liability for which had accrued under the act of 1916 and its amendments. There can be no question about this, but if it were not so, the liability would be saved under the provisions of section 13 of the Revised Statutes (Comp. St. § 14). Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001.

[2] No assessment of the deficiency or excess part of the tax here sought to be recovered was made by the Commissioner within four years after the tax became due, as required by section 1322 of title 13 of the Revenue Act of 1921 (Comp. St. Ann. Supp. 1923, § 6371⅘ii), which was in force on October 25, 1923, when the Commissioner determined the amount of the deficiency, which he would have been authorized to do under section 3182 of the Revised Statutes, being Comp. St. § 5904 (Nichols v. Gaston [(C. C. A.)] 281 F. 67, 72), within four years after the tax became due (Revenue Act of 1918, title 13, § 1305 [Comp. St. Ann. Supp. 1919, §§ 6371½c–6371½e]), notwithstanding the special provisions, contained in section 405 of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336¾f) and section 206 of the Revenue Act of 1916 (Comp. St. § 6336½g), calling on the collector or deputy collector to make the return.

The question remaining to be considered, and the only one of importance in the case, is whether the United States may maintain an action against the executors, either personally or in their representative capacity (for if in the former an amendment would be allowed), to recover a balance of a federal estate tax, the liability for which had accrued but the amount had not been assessed.

It is admitted by the executors' demurrer that the net estate of Frederick Ayer, when determined according to the provisions of the Revenue Act of 1916 and its amendments, amounted to $17,923,669.74, and that, under the act and its amendments, there became due and payable as a federal estate tax on this net estate the sum of $3,183,614.77, of which they had paid only $661,871.48; that they had made a return of a total gross estate of $6,162,336.26 and a net estate of $4,888,174.91, whereas in truth and in fact the gross estate was the sum of $19,207,719.45 and the net taxable estate was $17,923,669.74; that while they returned "gifts and transfers" (made by their testator in contemplation of death) amounting to $120,000, in truth and in fact they should have returned as "gifts and transfers" the sum of $13,103,948.26; in other words, there was a shortage in this item of $12,983,948.26; and that they failed to return under the items of "stocks and bonds" and "mortgages, notes and miscellaneous," the correct amounts thereof within $65,434.93; and they further admit that of the tax there is due and unpaid the sum of $2,521,743.29, with interest at 6 per cent. from March 14, 1919, of which due notice and demand for payment has been made.

The Revenue Act of 1916 was in force when Mr. Ayer died on March 14, 1918, and was the act under which liability for the tax was imposed. But on September 8, 1919, when the executors filed their return, the act of February 24, 1919, known as the Revenue Act of 1918, was in force, which contained the saving clause above referred to as to the assessment and collection of taxes that had accrued or arisen under the act of 1916 and its amendments, which saving clause, as also above pointed out, was not re-

pealed, as the court below thought, by the Act of 1921.

The provisions of the acts of 1916 and 1918, so far as material to the questions under consideration, are the same and for purposes of clarity and to avoid confusion reference will be made to the provisions of the act of 1918 only.

By section 401 (Comp. St. Ann. Supp. 1919, § 6336¾b) a tax "equal to the sum * * * of the net estate * * * is * * * imposed upon the transfer of the net estate of every decedent dying after the passage of this act," at fixed rates. By section 402 (Comp. St. Ann. Supp. 1919, § 6336¾c) the value of the gross estate of the decedent includes the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated (a) to the extent of his interest therein which is subject to the payment of charges against his estate and the expenses of its administration and to distribution as part of his estate, and (c) to the extent of any interest therein of which the decedent has at any time made a transfer in contemplation of or intended to take effect in enjoyment at or after his death, except in case of a bona fide sale for a fair consideration, and it further provided that any transfers of a material part of his property made by the decedent within two years prior to his death without such consideration shall, unless shown to the contrary, be deemed to have been made in contemplation of death. By section 409 (Comp. St. Ann. Supp. 1919, § 6336¾j), the tax, unless "sooner paid in full," is made a "lien for ten years upoon the gross estate of the decedent," except that "such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration * * * shall be divested of such lien." By section 404 (Comp. St. Ann. Supp. 1919, § 6336¾e) the executor is required to file with the collector a return setting forth (a) the value of the gross estate of the decedent at the time of his death; (b) the deductions allowed by the act; (c) the value of the net estate; and (d) the tax paid or payable thereon; and, if he is not able to give this information, it is provided that he shall state in his return "such part of such information as may at the time be ascertainable," and that he shall thereafter give "such supplemental data as may be necessary to establish the correct tax."

In this connection it is also provided that "if the executor is unable to make a complete return as to any part of the gross estate of the decedent, he shall include in his return a description of such part and the name of every person holding a legal or beneficial interest therein, and upon notice from the collector such person shall in like manner make a return as to such part of the gross estate." It also provides that the Commissioner shall assess the tax. By section 405 (Comp. St. Ann. Supp. 1919, § 6336¾f) it is provided, among other things, that "if no return is filed as provided in section 404, or if a return contains a false or incorrect statement of a material fact, the collector or deputy collector shall make a return and the Commissioner shall assess the tax thereon." By section 406 (Comp. St. Ann. Supp. 1919, § 6336¾g) the tax becomes "due one year after the decedent's death" and if "not paid within one year and 180 days after the decedent's death, interest at the rate of 6 per centum per annum from the expiration of one year after the decedent's death shall be added as part of the tax." By section 407 (Comp. St. Ann. Supp. 1919, § 6336¾h) it is provided that "the executor shall pay the tax" and that "if the amount of the tax cannot be determined, the payment of a sum of money sufficient, in the opinion of the collector, to discharge the tax shall be deemed payment in full of the tax, except," if it is too large to pay the tax as finally determined, "the Commissioner shall refund such excess" and, if it turns out to be too small, the collector shall notify the executor of the shortage and demand payment of it, and that if this sum is not paid within 30 days thereafter, interest at 10 per cent. is to be added from the expiration of such thirty-day period until paid, and "the amount of such excess shall be a lien upon the entire gross estate, except such part thereof as may have been sold to a bona fide purchaser for a fair consideration in money or money's worth."

This provision of section 407 has been argued at great length by counsel for the defendants, but it is evident that all it means is that, where, on the information contained in the return made to the collector, the amount of the tax cannot be determined, the collector may estimate the probable tax as best he can and the taxpayer may pay it and stop the accrual of interest. It determines nothing. It is a mere stop-gap for the taxpayer's benefit as to interest, and the reimposition of the lien was made, if the deficiency was not paid within the 30 days after notice, because of the increase in the tax by the addition of interest at the rate of 10 per cent. from the expiration of 30

days. But if this is not the correct meaning of this section it cannot reasonably be claimed to have any application to the facts in this case. According to the allegations of the declaration there was nothing about the return that showed it was incomplete so that the amount of the tax could not be determined, or that the sum paid was an estimated sum. The return on its face appeared to be complete. It was filed as a completed return, but contained incorrect statements of material facts. It failed to state correctly the amount of the gross estate to within $13,049,383.19 and necessarily misstated the net estate.

By section 408 (Comp. St. Ann. Supp. 1919, § 6336¾i), the collector is authorized, if the tax imposed is not paid within 180 days after it is due, to "proceed to collect the tax under the provisions of general law [distraint], or commence appropriate proceedings in any court of the United States, in the name of the United States, to subject the property of the decedent to be sold under the judgment or decree of the court." See Regulation 37, relating to Estate Tax, 1918.

To recapitulate: The statute imposes a tax upon the transmission of the net amount of a decedent's estate at the time of his death at certain fixed rates. To determine that net amount it provides what shall constitute the gross estate and what deductions shall be made from it to arrive at the net estate; that the gross estate, in addition to the property that ordinarily comes into the hands of an executor for administration, shall include gifts or voluntary transfers of property by the decedent in his lifetime made in contemplation of death, and that the tax imposed shall be a lien for 10 years upon the gross estate, unless "sooner paid *in full*." And it has been held that this lien for the tax attaches to the gross estate of the decedent from the time of his death, that is, simultaneously with the imposition of the tax. Hertz v. Woodman, 218 U. S. 205, 223, 30 S. Ct. 621, 54 L. Ed. 1001; Page v. Skinner (C. C. A.) 298 F. 731, 732. The statute also provides that the executor shall pay the tax; that the executor shall file a return, at the time fixed by the regulations, setting forth the value of the gross estate, the deductions allowed under section 403 (Comp. St. Ann. Supp. 1919, § 6336¾d), the value of the net estate, and the tax to be paid thereon, or, if unable to make a complete return, he shall state in his return "such part of such information as may at the time be ascertainable," and "as to any part of the gross estate of the decedent" as to which "he

is unable to make a complete return" he "shall include in his return a description of such part," and shall thereafter furnish "such supplemental data as may be necessary to establish the correct tax."

As above stated the return filed by the executors purported to be a complete return of all the gross estate and not a partial one. It was in fact partial for it did not include, as a part of the gross estate, the gifts or voluntary transfers made by the decedent in contemplation of death or a description of such gifts or transfers which the law required (section 404), and contained incorrect statements of material facts (section 405).

The executors are presumed to have known the requirements of law regulating the return which they were required to make and that in the item of gross estate should have been included "gifts and transfers" made in contemplation of death. It appears from the declaration that they in fact knew that the law required that they should include in the gross estate all "gifts and transfers" made by the decedent in contemplation of death, for in their return they included in the item of gross estate "gifts and transfers" to the amount of $120,000. And it would seem, if they did not know of the "gifts and transfers" made by Mr. Ayer, amounting to nearly $13,000,000 and substantially three-fourths of his estate, that they reasonably could have learned of their existence and included them in their return. And the question reduces itself to this: Whether the United States can maintain an action against the executors to recover the balance of the tax which the statute imposed, the executors having filed a return containing incorrect statements as to material facts, the tax never having been assessed.

Sections 1305 and 1318 of the act of 1918 (Comp. St. Ann. Supp. 1919, §§ 6371½c–6371½e, 6371½p) were not repealed by the act of 1921. By section 1305 "all administrative, special or stamp provisions of law, including the law relating to the assessment of taxes" were made a part of the act, and in section 1318 it was expressly provided that the special remedies provided in the act for the enforcement of its provisions were "in addition to and not exclusive of any and all other remedies of the United States * * * to enforce such provisions." Consequently the remedy given to the United States in section 3213 of the Revised Statutes (Comp. St. § 5937)

is open to it. That section, among other things, provides:

"And taxes may be sued for and recovered in the name of the United States, in any proper form of action, before any Circuit or District Court of the United States for the district within which the liability to such tax is incurred, or where the party from whom such tax is due resides at the time of the commencement of the said action."

It is contended that an assessment by the Commissioner on the return provided for in section 405 is a condition precedent to a suit by the United States to collect the balance of the tax. It might as well be contended that the assessment by the Commissioner under the original return called for in section 404 was a condition precedent to such right of action where a part of the tax had been paid, for in both sections it is provided that the Commissioner shall assess the tax. While it is quite evident that an assessment of the tax by the Commissioner under either section is a condition precedent to the right of the collector to enforce the special remedies accorded him under section 408, it does not follow, because this is so, that it is also a condition precedent to a suit by the United States to recover the tax, and we think it is not.

By the statute a tax was imposed on the transition of the net estate of Mr. Ayer at his death, to secure which a lien was imposed on the gross estate, and it was made the duty of the executors to pay the tax. This being so it is evident that on his death and the qualification of the defendants as his executors, the executors became obligated to the United States to pay the tax out of the gross estate upon which it was secured. The amount, if not agreed upon, can be determined by the court.

In United States v. Nashville, C. & St. L. Ry., 249 F. 678, 161 C. C. A. 588, the action was brought by the United States, at the direction of the Commissioner of Internal Revenue, against the railroad corporation to recover an excise tax of 1 per cent. on its net income claimed to be due from it for each of the years 1909 and 1910, respectively, under section 38 of the act of August 5, 1909 (36 Stat. 112). There the returns filed with the Commissioner were incorrect as to the amount of the defendant's income, and the statute under which the tax was imposed provided that, in case the return made was incorrect, the Commissioner might amend the return or make a return where none had been made, and, in case of a false (incorrect) or fraudulent report, on discovery thereof at any time within three years after the tax was due, could make a new assessment. The declaration, to which the defendant demurred, did not allege that the Commissioner within the three years discovered any false, fraudulent or erroneous return or that the Commissioner had made a return upon information or an assessment against the defendant of the amount sued for, and it was contended that without such assessment the United States was without remedy. It was there said:

"It is the general rule, applicable, not only to customs duties, but to internal revenue taxes, that a common-law action of debt lies in favor of the government whenever, by accident, mistake, or fraud, no duties or short duties have been paid (Meredith v. United States, 13 Pet. 486, 493, 10 L. Ed. 258; Dollar Savings Bank v. United States, 19 Wall. 227, 22 L. Ed. 80; United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519; United States v. Chamberlin, 219 U. S. 250, 260, 31 S. Ct. 155, 55 L. Ed. 204), and thus that the government may recover a personal judgment for a tax, either in a sum certain or when readily reducible to certainty, whenever there exists a duty to pay, provided always another remedy has not been made exclusive (United States v. Chamberlin, supra, 219 U. S. at page 262, 31 S. Ct. 155, 55 L. Ed. 204; Stockwell v. United States, 13 Wall. 531, 542, et seq., 20 L. Ed. 491; and see Alaska Mining Co. v. Alaska [C. C. A. 9] 236 F. 64, 149 C. C. A. 274)."

The court held (1) that the statute did not make the remedy by way of assessment on the part of the Commissioner exclusive of all other remedies and an implication to that effect was not to be invoked against the government, particularly in view of section 38, subdivision 8, which expressly extended and made applicable to the tax in question "all laws relating to the collection, remission, and refund of internal revenue taxes, so far as applicable to and not inconsistent with the provisions of this section," and of the provisions of sections 3213 and 3214 of the Revised Statutes (Comp. St. §§ 5937, 5938), which latter section required the sanction of the Commissioner to suits for taxes, and which had been obtained; and (2) that, even though an assessment could not be made after the three-year period and none was made, it would not prevent recovery in an action by the United States. In discussing these questions it was said:

"It by no means follows that the act in-

tended to take from the government power to enforce the payment of a tax to which a corporation is subject, through judicial process and without addition of penalty, whereby the corporation is given full opportunity to be heard in its defense in advance of enforcement—merely because the untrue return was not discovered and corrected within the three-year period—especially in view of the express provision of subdivision 8 above quoted, the general policy of the law to promote, rather than to obstruct, the collection of public revenue, and the commonplace proposition that, in the absence of statute otherwise, time does not run against the government.

"We think the adjudicated cases opposed to such construction. In Dollar Savings Bank v. United States, supra, the right of the government to maintain an action of debt for the recovery of certain taxes for several previous years which had not been returned or assessed as required by law, by reason of the Commissioner's construction of the Revenue Act, as not making such taxes payable, was sustained as against a dissent by two members of the court on the ground that action would not lie for the tax unless first entered on the assessment roll. Express authority to sue was found in the statute we have already quoted as section 3213 of the Revised Statutes.

"In United States v. Chamberlin, supra, the government sued for the amount of a stamp tax upon execution of conveyances under War Revenue Act June 13, 1898, c. 448 (30 Stat. 448–470), as amended by Act March 2, 1901, c. 806 (31 Stat. 941), which required the assessment levy, and collection of a percentage tax upon the 'consideration or value' of the property conveyed, and upon the claim by the government that the actual consideration for the conveyance *and the value of the lands* was a certain sum in excess of the consideration recited in the conveyance and upon which the payment by stamp was made. In sustaining the right of action it was said that the penalties provided by the act for its violation did not constitute the exclusive remedy of the government, and were 'without application where, for any other reason, the tax has not been paid and thereby the government has lost its revenue' (219 U. S. 265, 31 S. Ct. 160 [55 L. Ed. 204]), and that an action for a personal judgment for the tax lies 'whenever there is due a sum either certain or readily reduced to certainty' (219 U. S. 262, 263, 31 S. Ct. 159 [55 L. Ed. 204]). Here again express authority to sue at law was found

in section 3213 of the Revised Statutes * * *"

After commenting upon the decision in United States v. Tilden, 9 Ben. 368, Fed. Cas. No. 16,519, and quoting from it at length, and further commenting on United States v. Chamberlin, supra, the court said:

"In our opinion the cases cited are directly opposed to the proposition that an assessment by the Commissioner is a prerequisite to the right to sue. The declaration of the excise act, that every corporation subject to its terms 'shall be subject to pay annually a special excise tax' there defined and described, as effectually denotes a duty to pay and a corresponding right of recovery by suit as do the words 'there shall be levied, collected and paid' in the Customs Act of 1816 (considered in the Meredith Case, supra) and in the War Revenue Act of 1898 (considered in the Chamberlin Case)."

The provision of section 407 that the "executor shall pay the tax" cannot be regarded as less potent, so far as creating a duty to pay and a corresponding right of recovery by suit than was the language employed in the Revenue Act of August 5, 1909, or the Customs Act of 1816 or in the War Revenue Act of 1898. See Woerishoffer v. United States (decided November 16, 1925) 46 S. Ct. 33, 269 U. S. 102, 70 L. Ed. ——; United States v. Grand Rapids & I. R. Co. (D. C.) 239 F. 153; Id. (C. C. A.) 256 F. 989; Id., 248 U. S. 561, 39 S. Ct. 7, 63 L. Ed. 422.

The ascertainment of the net estate under this act does not present a different situation from that involved in the ascertainment of net income under the Revenue Act of August 5, 1909. In the Nashville Case questions of fact had to be determined upon testimony as they will here, but that did not trouble the court in that case and should not trouble us.

We think the suit may be maintained and a personal judgment had against the executors for the amount of the tax due and that all the property of the estate that came into the hands of the executors and was not used to pay debts and expenses of administration, together with that transferred by the decedent in his lifetime in contemplation of death, upon which a lien exists to secure payment of the tax, may be levied upon and sold to satisfy the judgment.

We do not find it necessary to review in detail the decisions relied upon by the defendants. It is sufficient to say that those we have in mind are district court decisions,

many of which are not applicable to the facts here in question, and, if one or more may be in a given aspect inconsistent with the present decision, we are not inclined to follow them.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with leave to the defendants in error to plead to the merits, if they desire.

JOHNSON, Circuit Judge. I concur in the result reached by the above opinion, and also in the opinion, except the statements made in it in regard to the admissions by the executors' demurrer. I think the allegations in the declaration in regard to the net taxable estate of Frederick Ayer and the tax due thereon are conclusions of law, and followed the determination made by the Commissioner of Internal Revenue and in the review and audit made by him in the declaration. While the demurrer admits that the Commissioner determined "upon review and audit of the said return and upon information obtained by him * * * that the gross estate, deductions, net estate, and the federal estate tax were," as set out in the declaration, it does not admit that this determination was made in accordance with the provisions of the Revenue Act of 1916 or other acts relating to the imposition and assessment of the tax.

I therefore am of the opinion that, although the demurrer has been overruled by this court, the executors may plead to the merits of the case, and contest the allegations of the declaration.

ANDERSON, J. (concurring in result). This case is an important one, not merely in the amount involved, but in the far-reaching consequences of the construction now given to the statutes. The gist is whether this case is ruled by United States v. Chamberlin, 219 U. S. 250, 31 S. Ct. 155, 55 L.

Ed. 204. This seems to me a close and doubtful question, that can be settled only by the Supreme Court, where it may be expected and hoped this case will go. With this prospect, doubts may well be resolved in favor of overruling the demurrer, so that on full trial all questions of fact may be settled before the case goes up. On this ground I concur in the result, but not in the opinion.

Under the rulings now made, the elaborate provisions of the statutes as to returns by executors (enforceable by penalties) partial payment by executors, and subsequent assessment by the Commissioner, are all (so far as the government's right to recover the tax as a debt is concerned) entirely immaterial. The gist of the opinion is that the *statute* imposes and assesses the tax, and secures it by a ten-year lien on the estate; that within six years after death the government may, by suit, require the court to determine the base upon which the tax is levied, and in that restricted sense to act as tax assessor. The extent to which, on this theory, the court may be required to assume the functions of tax assessor, may be illustrated by arranging in parallel columns the items shown in the return of the executors and in the government's so-called audit:

|  | Executors' Return. | Com's Audit. | Inc. or Dec. in Audit. |
|---|---|---|---|
| Real estate | $1,084,935.70 | $ 1,080,935.70 | $ 4,000.00— |
| Gifts and transfers | 120,000.00 | 13,103,948.26 | 12,983,948.26+ |
| Stocks and bonds | 3,565,019.11 | 3,612,921.04 | 47,901.93+ |
| Mortgages, notes and miscellaneous | 1,392,381.45 | 1,409,914.45 | 17,533.00+ |
| Total gross estate | $6,162,336.26 | $19,207,719.45 | $13,045,383.19+ |
| Total deductions | 1,274,161.35 | 1,284,049.71 | 9,888.36+ |
|  | $4,888,174.91 | $17,923,669.74 | $13,035,494.83+ |
| Total tax |  | 3,183,614.77 |  |
| Total tax discharged on basis of return |  | 661,871.48 |  |
| Additional tax now claimed |  | $ 2,521,743.29 |  |

Every item entering into the final base of the tax is in controversy.

Obviously under the rulings in the majority opinion, executors and administrators may be moved to make returns—that is, to disclose the facts relative to the estates in their control—in order to avoid the penalties provided in section 410 (Comp. St. Ann. Supp. 1919, § 6336¾k), for nondisclosure or incorrect disclosure, as well as by a desire to end the ten-year lien, in order to enable them to settle their estates. But such returns are now held to be in no sense necessary conditions precedent to the imposition of the tax and its collection by the government as a debt, with interest at the rate of 6 per cent. This theory permits no scope to the provision in section 407 for

possible partial payment and subsequent assessment by the Commissioner of an additional tax with interest (in the nature of a penalty) at the rate of 10 per cent. if such additional tax remain unpaid longer than 30 days. Section 407 is said to be "a mere stopgap for the taxpayer's benefit as to interest."

Undoubtedly, if the law did impose and assess the tax now in question, the government may recover it as a debt. But I have not been able to convince myself that Congress intended the elaborate provisions of the statutes as to return and assessment by the Commissioner to be entirely disregarded, as the majority opinion in effect holds. It seems to me that the weight of argument is the other way. Some of the serious objections to such a theory of a general liability for taxes not assessed by any tax official are suggested in the dissenting opinion of Justices Bradley and Field in Dollar Savings Bank v. United States, 19 Wall. 227, 241, 22 L. Ed. 80.