## FITZROY v. UNITED STATES.
### No. 42626.

Court of Claims.
Jan. 11, 1937.

Lyon & Lyon, of Washington, D. C., for plaintiff.

Guy Patten, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

John Douglas Bates, a citizen of Massachusetts, died May 14, 1900. Administrators were duly appointed for his estate and pursuant to the Act of June 13, 1898 (30 Stat. 448), made two legacy tax returns covering distributions of the estate property and paid the tax imposed by this statute. The last distribution was not made until after July 1, 1902, and $10,907.-70 tax was paid by the administrators on March 12, 1903. On April 7, 1928, plaintiff, as sole administratrix of the estate, filed a claim for refund of all of the legacy taxes paid, but this suit is brought only to recover the tax paid on the last distribution to the next of kin on the ground that it was erroneously assessed and illegally collected. The validity of the tax depends on several statutory provisions.

Section 29 of the Spanish War Revenue Act, approved June 13, 1898 (30 Stat. 448, 464), provides: "Sec. 29. That any person or persons having in charge or trust, as administrators, executors, or trustees, any legacies or distributive shares arising from personal property, where the whole amount of such personal property as aforesaid shall exceed the sum of ten thousand dollars in actual value, passing, after the passage of this Act, from any person possessed of such property, either by will or by the intestate laws of any State or Territory, or any personal property or interest therein, transferred by deed, grant, bargain, sale, or gift, made or intended to take effect in possession or enjoyment after the death of the grantor or bargainer, to any person or persons, or to any body or bodies, politic or corporate, in trust or otherwise, shall be, and hereby are, made subject to a duty or tax."

The other provisions of this section need not be set out, as there is no controversy over the amount of the tax if it was properly levied. On April 12, 1902, an act taking effect July 1, 1902, was approved (32 Stat. 96) which repealed the provisions of the Act of June 13, 1898, and the statute of June 27, 1902 (32 Stat. 406), authorized the Secretary of the Treasury to refund "so much of said tax [collected under the act of June 13, 1898] as may have been collected on contingent beneficial interests which shall not have become vested prior to July first, nineteen hundred and two." Section 3.

By the Act of March 30, 1928 (45 Stat. 398), the time for presenting the claim for refund was extended to six months after March 30, 1928, "where and when and only when it be found and determined that such taxes were collected upon the erroneous interpretation of the law passed upon and condemned by the United States Supreme Court in decisions rendered in the case of United States against Jones, administrator,[1] and in the case of McCoach, collector, against Pratt.[2]" Section 1.

The plaintiff claims that the tax in controversy was collected "on contingent beneficial interests" which had not "become vested prior to July 1, 1902," and is consequently refundable. This constitutes the sole issue between the parties to the action.

[1] 236 U.S. 106, 35 S.Ct. 261, 59 L.Ed. 488, Ann.Cas.1916A, 316.

[2] 236 U.S. 562, 35 S.Ct. 421, 59 L.Ed. 720.

In determining this issue it becomes necessary to consider the statutes of Massachusetts applicable to the case and the construction given them by the courts of that State as well as the construction of the federal statute, set out above, by the Supreme Court and lower federal courts.

Under the laws of the State of Massachusetts, the period of administration was two years from the. date of granting letters of administration. Conversely, an administrator could be held to answer to an action begun by a creditor within this period. On June 14, 1900, all of the then known heirs having consented and notice having been given to the creditors of the estate, the administrators were appointed without bond. On January 1, 1901, the administrators learned for the first time that there were two other heirs in the same degree as those already made known, and on February 1, 1901, these additional heirs entered their appearance as next of kin to the decedent, gave their consent to the appointment of administrators without surety in the probate court, and thereafter each participated in the distribution of the estate in equal degree with those who had first given their consent. Upon these facts it is contended that the administration period did not legally begin under the laws of Massachusetts until all of the distributees or beneficiaries of the estate had consented to the administrators giving bond without surety, which date was February 1, 1901; that the two-year period of administration did not expire until after July 1, 1902, and the creditors could bring suit against the administrators within the last named period. It is urged that the probate court had no authority to approve the bond upon consent of only part of the heirs and that the bond did not become valid until the consent of the remaining heirs had been obtained, with the result that the shares or interest of the heirs remained contingent and were not vested within the prescribed period. In support of this argument the plaintiff cites Abercrombie v. Sheldon, 8 Allen (Mass.) 532, 533, 534, and Everett Trust Co. v. Waltham Theatre Amusement Co., 267 .Mass. 350, 363, 166 N.E. 831.

In the Abercrombie Case, supra, no notice was given to creditors and basing its ruling on this fact the court held that. the statute of limitations did. not run against the creditors until proper notice was given. This case did not hold that the acts of the executors were without legal force and effect in relation to any other parties in interest, but simply that "a creditor who has not had the notice which the statute expressly directs is not bound in any manner." The Everett Trust Co. Case, supra, we think has no application.

Morgan v. Dodge, 44 N.H. 255, 82 Am. Dec. 213, although cited by plaintiff, does not support her contention. In that case the widow failed to give notice that she accepted the provisions of the will, which was one of the conditions upon which a bond of the character given by the executrix could be accepted. The New Hampshire court held in effect that the letters of administration were not void but voidable and sufficient until revoked. The fact that in the case at bar two heirs who had been theretofore unknown did not come in until about six months later and enter their consent to the appointment of the administrators without surety did not, as we think, extend the period of limitations on the part of creditors for filing claims. The creditors had been duly notified and made no objection to the bond. Whatever objections anyone else might have made were waived and the order approving the bond and appointing the administrators has never been revoked or modified by the court.

Another and as we think more effective objection to the validity of the tax in controversy is made by the plaintiff.

In appears that on March 2, 1901, all the debts and charges against the estate having been paid, an order and decree was entered by the probate court establishing the respective interests of the widow and six cousins of the decedent in the personal estate then remaining in the possession of the administrators which amounted to $869,152.95, and $360,000 was distributed. Before the period for filing claims had expired (which date we have found to be June 14, 1902) an attorney entered an appearance in the probate court for "Edwin G. Bates, one of the next of kin of John D. Bates," and on June .18, 1902, a petition was filed pursuant to this appearance which showed that Edwin G. Bates was claiming a share in the distribution of the then remaining undistributed portion of the estate in equal degree with the six cousins of the decedent whose interests had already been established. This petition was dismissed by a decree of the probate court on September 30, 1902, and an appeal having been taken to the Supreme Judicial Court of the State, a final order .was entered therein on November 13, 1902, affirming the action of the probate court. Some time after July 1,

1902, the remainder of the personal estate of the decedent amounting to $509,152.95 was distributed by the administrators, one-half to the widow and one-half to the cousins of the decedent whose interests had theretofore been established by the court. The administrators filed a second legacy return and under it paid to the collector a tax in the sum of $10,907.70 on August 27, 1903, being the tax in controversy. Plaintiff now contends that the estate was in litigation until subsequent to July 1, 1902, the date when the taxing act was repealed, and consequently no beneficial interests vested in possession or enjoyment of the heirs prior to that date and the tax was refundable.

Numerous cases are cited by the respective counsel of the parties but the case before us is a peculiar one and the facts in it differ from those in any of the cases to which our attention is called. Both parties cite McCoach v. Pratt, 236 U.S. 562, 35 S.Ct. 421, 59 L.Ed. 720, but the decision in that case merely explained the decision in the Jones Case, 236 U.S. 106, 35 S.Ct. 261, 262, 59 L.Ed. 488, Ann.Cas.1916A, 316, and applied the rule established in that case. In both of these cases, the period for filing claims against the estate did not expire until after July 1, 1902. Counsel for defendant argues that the decisions in these two cases confined the application of the statute to cases in which a similar state of facts existed, but the portion of the opinion in the McCoach Case, supra, upon which defendant relies was obviously intended to apply merely to the particular facts which existed in that case. The general principle which governs the imposition of the tax was expressed in the Jones Case as follows: "The decisive question, therefore, in the present case, is whether the beneficial interests of the daughters, upon which the tax was collected, had become absolutely vested in possession or enjoyment prior to July 1, 1902, or were at that time contingent. If they had become so vested, the effort to recover the tax must fail; but, if they were contingent, the tax must be refunded."

Considering now the particular facts shown to exist in the case at bar, it will be noticed that we have held in effect that the time for filing claims expired on June 14, 1902, and it will be further observed that this is the earliest date possible even under defendant's contention. Until the expiration of that period the shares of the heirs could not be definitely determined but, as shown above, before that date arrived an appearance was entered for another alleged heir. The petition pursuant to this appearance, as stated above, was not filed until June 18, 1902, but it showed that one Edwin G. Bates was claiming a share in the distribution of the then remaining undistributed portion of the estate in equal degree with the six cousins of the decedent whose interests had already been established. This petition was subsequently dismissed, but the final action upon it by the Supreme Court was not taken until November 13, 1902.

Without considering the appearance which had been filed, it is obvious that the heirs were not entitled to either possession or enjoyment prior to June 14, 1902, because the time for filing claims had not expired. Whether they were entitled to possession or enjoyment prior to July 1, 1902, depends on the effect of the proceedings instituted in behalf of Edwin G. Bates.

The heirs were not in actual possession of their shares prior to the date last mentioned, but we do not think this was necessary in order that they should be in enjoyment thereof. If they had the right to demand from the administrators possession of their interests as established by the court, we think this right constituted an "enjoyment" within the meaning of the statute, but we are unable to find that at any time prior to July 1, 1902, they had the right to demand that their shares be turned over to them. We have already seen that they could not demand payment thereof even if there had been no appearance for other parties prior to June 14, 1902. It has also been noted that before that date arrived an appearance was entered by an attorney which notified the administrators that an additional person claimed to be "next of kin" and entitled to a share in the distribution of the funds in their hands. The administrators had no way of knowing what kinship was claimed until the petition was filed. For aught they could determine before the filing of the petition, Edwin G. Bates might be claiming a close relationship to the intestate. The petition, it is true, was not filed until June 18, 1902, four days after the expiration of the ordinary period of administration, and when the time for filing claims had expired, but it was filed within the requisite time after the appearance was entered for action to be taken thereon by the court, and while it was subsequently dismissed a contingency was created by the entry of

508

appearance for an alleged heir and this contingency existed until final action was taken thereon by the Supreme Court. Would any court while litigation of this nature was pending say that the heirs had the right to demand their respective shares as previously determined and order the administrators to make distribution accordingly? We think not, and if we are correct in this conclusion the heirs could not be said to be in absolute possession and enjoyment of their interests.

It may be contended that notwithstanding the appearance of another who claimed to be an additional heir in the same degree, his claim could only reduce the interest of the other heirs one-seventh each and that they still had an absolute right to the enjoyment of the remainder. But the reduction would depend on the degree of relationship claimed and in any event a reduction of one-seventh, considering the size of the estate, was not an insignificant matter.

■ Partial distributions are often made, sometimes by the administrators on their own motion and sometimes after a motion has been made by the heirs and the distribution approved by the court. In most jurisdictions it would seem that the heirs have no absolute right to a partial distribution pending the determination of litigation or other matters affecting the amounts to which they are respectively entitled. The matter rather rests in the discretion of the court after application has been made. It will be noted in this connection that the Government does not make any claim based on the right of partial distribution, and until the petition was filed showing the degree of relationship claimed by Edwin G. Bates, the court would be unable to determine what amount could be safely distributed.

In Massachusetts the rule with reference to distributions is much stronger against the defendant than has been stated above. Cathaway v. Bowles, 136 Mass. 54, 55, was a case in which the final account of the administrator had been approved, and nothing remained to be done except to pay plaintiff, as sole heir, the amount shown to be due, for which plaintiff brought suit. The court said: "The obligation to a distributee assumed by an administrator is 'to pay to such persons as the court may direct any balance remaining in his hands upon the settlement of his accounts.' Pub.Sts. c. 130, § 2, Gen.Sts. c. 94, § 2. This contemplates that an adminis-

trator is entitled to be protected by a decree of distribution, passed by the Probate Court, before he can be called upon to divide the balance remaining in his hands among those claiming it as distributees under the statutes."

■ It will be observed that under this rule the administrator is not obligated to make payment until his accounts are settled.

The court further said in this case:

"The proper course for a distributee is to apply to the Probate Court for a decree of distribution. Upon the passing of such a decree in his favor, he has a plain remedy against the administrator, who also is fully protected by the decree. Loring v. Steineman [1 Metc. 204]. * * *

"It can make no difference that, in the case before us, the plaintiff claims to represent the sole heir at law, or that the defendant has paid her one half of the balance in his hands. The administrator has the right to have the question whether the plaintiff's intestate was the sole heir at law, entitled to the whole balance in his hands, tried in the Probate Court, which court alone is competent to render a judgment which will fully protect all parties."

■ The administrator may, however, voluntarily make payment at his own risk, or require a distributee to give security to indemnify him against the risk.

■ We think it is clear that under the Massachusetts statute and the holdings of the courts of that State thereon, the heirs had no right to demand payment of the administrators in the case now before us as they had not obtained any order for distribution from the court nor even applied for one. The rule laid down above is also stated in Browne v. Doolittle, 151 Mass. 595, 598, 25 N.E. 23, and Flynn v. Flynn, 183 Mass. 365, 367, 67 N.E. 314. In both of these cases it is held that the distributee cannot maintain an action against the administrator until there has been a decree for distribution.

Several cases are cited on the part of the defendant as holding that the fact that distribution of the full amount of the legacies was withheld because of litigation, would not prevent the application of the tax, but in none of these cases was there any contingency as to the amount of the interest of the beneficiary, or his right to demand and receive it before July 1, 1902. In Simpson v. United States, 252 U.S. 547,

40 S.Ct. 367, 64 L.Ed. 709, the court found that the condition of the estate was such that the legatees had a statutory right to institute suit to compel payment of their legacies in full prior to July 1, 1902, and that the suit which had been commenced by some other parties could not in any way have affected such payment. In the case of Cochran v. United States, 254 U.S. 387, 41 S.Ct. 166, 65 L.Ed. 319, it appeared that there were some claims, the amount of which had not been ascertained, but the time for filing additional claims had expired, and the size of the estate was so great and the possible amount of these claims so small in comparison that the court held that distribution was properly made, and having been made before July 1, 1902, could be taxed. The main contention in the case was that the tax was invalid because there was no assessment thereof until after July 1, 1902, when the law establishing the taxes was repealed. This point was overruled by the court.

The case of Kahn v. United States, 257 U.S. 244, 42 S.Ct. 85, 66 L.Ed. 215, cited on behalf of defendant, is also distinguishable. In that case, the court found that the amounts of the legacies were ascertainable and that all claims had been settled or barred except some taxes relatively very small in amount compared to the size of the estate and that a sufficient sum would have remained for their payment after the beneficiaries had received their shares. Upon these facts, the court held that the heirs were entitled to distribution in full.

The case of Woerishoffer v. United States, 269 U.S. 102, 46 S.Ct. 33, 70 L.Ed. 180, is similar to the Kahn Case.

In all of the cases cited on behalf of defendant on the point now being considered it appeared that there was no contingency as to the amount to which the legatees were respectively entitled, their shares having been fixed and determined and the funds of the estate were sufficiently large to pay any small claims that existed and leave a remainder sufficient to pay the legatees or distributees in full. It was therefore held that the heirs had an immediate right to receive their shares. Consequently they were absolutely vested and subject to the tax, but the situation was altogether different from that which existed in the case at bar.

The case of United States v. Marion Trust Co. (C.C.A.) 143 F. 301, is somewhat similar in its facts to the case at bar and is cited on behalf of plaintiff. Osgood, the intestate in that case, died nearly two years before the taxing act was repealed. "But owing to a dispute between certain persons who claimed to be his heirs, and to the pendency of certain unsettled claims against the estate, the estate remained in process of administration, and was not distributed until after the repealing act." In ruling upon the case the court said: "Until the estate is ready to pass, without diminution, to the heir, no assessment can take place." The holding was in effect that when the amount which passed to the heirs could not definitely be determined, the tax could not be imposed.

Our conclusion is that the shares of the lawful heirs had not become absolutely vested prior to July 1, 1902, and that the tax in controversy was illegally assessed. Judgment will be awarded plaintiff for $10,907.70.